**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jimmie TRUITT, Jr., Defendant-Appellant.**

No. 75-1188.

United States Court of Appeals, Sixth Circuit.

Aug. 27, 1975.

Millard Cox, III, Louisville, Ky. (Court-appointed C.J.A.), for defendant-appellant.

George J. Long, U. S. Atty., James H. Barr, Louisville, Ky., for plaintiff-appellee.

Before WEICK and ENGEL, Circuit Judges and CECIL, Senior Circuit Judge.

ENGEL, Circuit Judge.

Jimmie Truitt, Jr. was convicted in a non-jury trial of unlawful possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871. The sole issue raised in this direct appeal is whether the introduction at his trial of the shotgun was the product of an unlawful search and seizure and hence should have been suppressed. We affirm.

On September 10, 1974 officers of the Louisville, Kentucky Police Department, commanded by Sergeant John E. Aubrey, entered the Dixie Tackle and Gun Shop in Louisville for the purpose of ex-

---

ecuting a search warrant. The proprietor, Charles E. Schupp, was present at the time of the search. The warrant described the following personal property:

"betting slips, scratch sheets, daily ledger records, and/or any other papers, records used to record bets received, pay offs to winners, etc. with regards to horse races and/or other sports events."

The police officers proceeded to search for the gambling paraphernalia, and after approximately five minutes, Sergeant Aubrey discovered the sawed-off shotgun lying on top of two boxes which were located underneath the counter. Attached to the shotgun was a repair tag bearing the name of J. Truitt, and indicating a $9 charge for installation of a firing pin. The search continued for approximately 15 or 20 minutes until the officers uncovered the evidence sought: a cigar box containing betting slips, scratch sheets, racing forms and approximately $200 in cash. Schupp was arrested and taken with the gambling paraphernalia and the shotgun to police headquarters. So far as the record reveals, the police at the time of the seizure had no knowledge of whether the gun was registered as required under the National Firearms Act. 26 U.S.C. § 5801, *et seq.*

■ The validity of the search warrant is not challenged, nor is it claimed that the search itself was pretextual. The sawed-off shotgun was in plain view when it was discovered and appears without serious dispute to have been found inadvertently during the course of the search for the items described in the warrant. Truitt had standing to challenge the search. *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Cash v. Williams*, 455 F.2d 1227, 1229 (6th Cir. 1972).

■ Truitt's sole claim on appeal is that since the sawed-off shotgun was not described in the search warrant, it was not properly seized even though discovered by the officers in the course of

their valid search for the gambling paraphernalia. Truitt relies upon this court's recent decision in *United States v. Gray*, 484 F.2d 352 (6th Cir. 1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974), and particularly upon the following language:

"The fourth amendment requires that warrants particularly describe the things to be seized. The specificity of description requirement furthers the goal of privacy which the fourth amendment was designed to protect by insuring that even when a search is carried out pursuant to a warrant, the search is limited in scope so as not to be general or exploratory." 484 F.2d at 354.

Truitt also relies upon the frequently quoted statement in *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927) that:

"The requirements that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

However, as pointed out by Judge Miller in *United States v. Gray, supra*, the above quoted from *Marron* fails to recognize the plain view doctrine, now well established in the law of search and seizures. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). The plain view doctrine has been fully explained by Mr. Justice Stewart in *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971):

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for

being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search for one object to another until something incriminating at last emerges."

The requirements of the "plain view" doctrine are satisfied in the present case. The police officers had prior justification for their intrusion upon the premises in the execution of a valid search warrant. It is undisputed that they inadvertently found the shotgun in the course of their search for the articles named in the warrant. The gun was discovered in plain view in a location where gambling paraphernalia might reasonably have been expected to be found. It was not necessary to engage in a general exploratory search nor to expand either the area or the time of the search in order to uncover the evidence.

Thus we conclude that *Coolidge v. New Hampshire, supra,* fully provides the justification for the seizure of the shotgun if that shotgun can qualify as "an incriminating object" found under circumstances where "it is immediately apparent to the police that they have evidence before them." It was this particular requirement which prompted us to hold that the seizure of the rifles in *United States v. Gray, supra,* could not be justified. The rifles in *Gray* were, it ultimately developed, stolen. There was, however, nothing to indicate that fact when the officers first discovered them. This was learned only after the serial numbers of the rifles were dispatched through the National Crime Information Center. Noting that "it was not 'immediately apparent' that the rifles were 'evidence incriminating the accused' ", Judge Miller further observed:

"The rifles were not contraband; there was no nexus between the rifles and the crimes of selling or possessing

intoxicating liquor without a license; nor did the officers at the time have any knowledge that the rifles were evidence of any other crimes." 484 F.2d at 355.

The question, therefore, is whether there is any difference between the discovery of the rifles in *Gray* and the discovery here of the sawed-off shotgun underneath the counter of the gun and tackle shop. Truitt claims "no". To the assertion that a shotgun is per se contraband, he correctly points out that a sawed-off shotgun, by proper registration, can be lawfully possessed, relying on the following statement in *United States v. Goodson,* 439 F.2d 1056, 1058 (5th Cir. 1971):

"We note initially that mere possession of a firearm as defined in § 5848 is not per se unlawful—only when that possession is conjoined with the failure of the possessor or another to comply with one or more of the enumerated regulatory sections does a violation of [The National Firearms Act] occur".

From this, appellant contends that "Consequently, seizure of the shotgun cannot be justified on the theory that mere possession of the weapon constituted a crime".

 If the foregoing were the standard for determining whether the shotgun might be seized, we might agree. However, we do not understand that to be the standard.

*Coolidge* implicitly requires that an object seized under the plain view doctrine be "an incriminating object" or "a piece of evidence incriminating the accused". Webster's Third New International Dictionary (unabridged) defines "incriminat[ing]" as "furnish[ing] evidence or proof of circumstance *tending* to show the guilt of" (emphasis added). The plain view doctrine operates only to excuse the necessity of a warrant; the concomitant requirement of probable cause is not altered. Thus, the question is whether probable cause existed. It is not, as pointed out in *Brinegar v. United States,* 338 U.S. 160, 174, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) whether the evi-

dence discovered establishes the guilt of a given defendant beyond a reasonable doubt. Nor is it controlled by "distinctions between 'mere evidence', instrumentality, fruits of crime or contraband". *Warden v. Hayden,* 387 U.S. 294, 301, 87 S.Ct. 1642, 1647, 18 L.Ed.2d 782 (1967). Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient within themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 288, 69 L.Ed. 543, 162 (1925). The inquiry, we think, therefore, is not primarily whether the object is contraband, but whether its discovery under the circumstances would warrant a police officer of reasonable caution in believing that an offense has been or is being committed and that the object is evidence incriminating the accused.

Analyzing the validity of the seizure in this manner, we believe, assures a closer adherence to the principles embodied in the Fourth Amendment than does a test based upon whether a given object is or is not contraband. A sawed-off shotgun, properly registered to its owner, is not contraband, but its lawful possession is, in ordinary experience, rare indeed. There is very little legitimate use for such a weapon. The question is one of probability. Whether it is true, as pointed out by Judge Heaney in *United States v. Cecil,* 457 F.2d 1178, 1182 n. 1 (8th Cir. 1972), (dissenting opinion), that "Less than 15,000 sawed-off shotguns are registered in the entire United States, most of which are registered to governmental agencies for training purposes or to residents of Western states", we do not know (see also *United States v. Story,* 463 F.2d 326, 328 (8th Cir. 1972), *cert. denied,* 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 254). We hold police officers to a standard not of after-acquired statistical probability, but rather to the conduct of "reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, non-technical conception . . . ." *Brinegar v. United States, supra,* 338 U.S. at 176, 69 S.Ct. at 1311. It is enough, we think, therefore, to hold as did the trial judge here that:

> "I think it is a matter that is pretty common knowledge, sawed-off shotguns are not used by the average law abiding citizen of this community."

As observed in *Porter v. United States,* 335 F.2d 602, 607 (9th Cir. 1964); *cert. denied,* 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574.

> "But a sawed-off shotgun in private hands is not an intrinsically innocent object. The possession of it is a serious crime, except under extraordinary circumstances. If the appellant had been present when the shotgun was discovered, the officers' duty would have been to immediately arrest him for the indicated crime committed in their presence, and to take custody of the object which was the subject of the crime. To paraphrase the language hereinbefore quoted from *Brinegar v. United States,* the discovery of the sawed-off shotgun would have warranted officers of reasonable caution in the belief that an offense was being committed."

We recognize that the environment in which the sawed-off shotgun was found, a gun and tackle shop where the presence at least of ordinary firearms is to be expected, is perhaps less suspicious than in other cases in which similar seizures were upheld. Thus, in *Porter v. United States, supra,* the gun was found in the possession of a person identified as a bank robber driving an automobile registered in a fictitious name. In *United States v. Cecil, supra,* the sawed-off shotgun was found in the Omaha headquarters of the National Committee to Combat Facism when the officers entered those premises for purposes of serving an arrest warrant on parties charged with murder. Nevertheless, we agree with the trial judge that the cir-

cumstances here afforded probable cause. There was no readily available explanation of a lawful possession either by the proprietor or by the person whose name was on the tag. The premises were linked to the operation of illicit gambling activities by the circumstances contained in the affidavit for the search warrant. Under such circumstances there was sufficient evidence to justify the officer in concluding reasonably that the sawed-off shotgun was incriminating evidence of a crime which had been or was being committed.

Accordingly, the judgment of the district court is affirmed.