STATE OF NEW JERSEY, PLAINTIFF, v.
EDWARD G. SCOTT, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)

Decided January 31, 1978.

422

Mr. *Archibald Kreiger*, Assistant County Prosecutor, for plaintiff (*Thomas J. Shusted*, Prosecutor of Camden County, attorney).

Mr. *Leonard R. Wizmur* for defendant.

TALBOTT, J. C. C., Temporarily Assigned. Defendant moves to suppress evidence and for the return of property wrongfully seized. The Camden County Narcotics Strike Force acting under a valid search warrant for controlled dangerous substances and related paraphernalia, seized from defendant's home three rifles and a pistol. Information produced by a pre-entry wire-tap was sufficient to give the officers probable cause to believe defendant possessed controlled dangerous substances allowing them to obtain a search warrant. Further, they reasonably believed the situation presented such danger that ten officers were sent for the search. The pistol was found in the bedroom under the mattress after the only occupants of the house, defendant and a companion, had been secured under police guard in the kitchen. The location of the three rifles was voluntarily disclosed by defendant. All four guns were taken to police headquarters. A check with the National Crime Information Center the next day revealed the pistol was stolen, and charges were subsequently brought against defendant for possession of stolen property.

Defendant contends that the seizure of the guns cannot be justified as incident to an arrest, as necessary to insure the safety of the officers, or under the "plain view" doctrine. The State contends that the seizure is justified since the rifles were voluntarily surrendered and the pistol was found in plain view in a place reasonably searched for controlled

dangerous substance. The State also contends lifting of the mattress was not an expansion of the permissible scope of the search. *Harris v. U. S.,* 331 *U. S.* 145, 67 *S. Ct.* 1098, 91 *L. Ed.* 2d 1399 (1947); *State v. Harris,* 143 *N. J. Super.* 314 (Law Div. 1976).

This court agrees that the seizure was not incident to an arrest. No controlled dangerous substance was found on the premises and defendants were not arrested until the next day. However, this court finds that the pistol was discovered in plain view while the police carried out the valid purposes of the search warrant, and the seizure was necessary for the safety of the officers.

Defendant challenges the State's contention that the "plain view" doctrine justified the seizure of the guns. He cites the case of *Coolidge v. New Hampshire,* 403 *U. S.* 443, 91 *S. Ct.* 2022, 29 *L. Ed.* 2d 564 (1971), in which that doctrine is explained:

> What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification — whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some legitimate reason for being present unconnected with a search directed against the accused — and permits the warrantless seizure.

Defendant contends that the present case does not fall within the "plain view" doctrine because of the following proviso set out by the *Coolidge* court:

> Of course, the extention of the original justification is legitimate only where it is *immediately apparent to the police that they have evidence before them.* [403 *U. S.* at 466, 91 S. Ct. at 2038; emphasis supplied by defendant]

Defendant argues that it was not "immediately apparent to the police that they [had] evidence before them" because the guns were not contraband and there was no nexus be-

tween firearms and the possession for sale of controlled dangerous substance. That raises the question of when may a gun be considered contraband. In *Warden, Maryland Penitentiary v. Hayden,* 387 *U. S.* 294, 87 *S. Ct.* 1642, 18 *L. Ed.* 2d 782 (1967), contraband was defined as property, the possession of which is a crime. Ordinarily, defendant's possession of a loaded gun in his home would be lawful under *N. J. S. A.* 2A:151-42, which gives a person permission to keep "any firearm" about his dwelling house. Further, the officers had no reason to believe that defendant or his companion were convicted felons, thereby making possession of firearms by them a crime. *N. J. S. A.* 2A:151-8.

There are many cases in other jurisdictions which approve the seizure of guns discovered in plain view on execution of valid search warrants issued for confiscation of narcotics or gambling paraphernalia. *Palmer v. U. S.,* 92 *U. S. App. D. C.* 103, 203 *F.* 2d 66 (D. C. Cir., 1953); *U. S. v. Chapman,* 549 *F.* 2d 1075 (6 Cir., 1977); *U. S. v. Anderson,* 175 *U. S. App. D. C.* 75, 533 *F.* 2d 1210 (D. C. Cir., 1976); *U. S. v. Truitt,* 521 *F.* 2d 1174 (6 Cir., 1975).

Whether such guns may be seized as contraband has not been decided by a New Jersey court; therefore, an analysis of holdings in other jurisdictions on similar facts is helpful in reaching a decision. This is particularly so since the defendant in this case relies upon *U. S. v. Gray,* 484 *F.* 2d 352 (6 Cir., 1973), *cert.* den. 414 *U. S.* 1158, 94 *S. Ct.* 916, 39 *L. Ed.* 2d 110 (1974).

In *Gray* rifles were found in plain view when officers conducted a search under a warrant for illegally possessed intoxicating liquors which were being sold without a license. The Smith Circuit observed, as does defendant here, that "it was not 'immediately apparent' that the rifles were 'evidence incriminating the accused.'"

The Court noted that

The rifles were not contraband; there was no nexus between the rifles and the crimes of selling or possessing intoxicating

liquor without a license; nor did the officers at that time have any knowledge that the rifles were evidence of any other crimes. [484 *F.* 2d at 355]

The evidence, the rifles, was suppressed.

In *U. S. v. Truitt, supra,* defendant relied unsuccessfully on *Gray.* His sole claim on appeal was that since the sawed-off shotgun was not described in the search warrant, it was not properly seized, even though discovered in plain view. Defendant in the present case, relying upon *Gray,* presents the same contention.

*Truitt* held that the seizure of the sawed-off shotgun was permitted where police officers executed a valid search warrant for gambling paraphernalia at a sporting goods store, and inadvertently discovered the weapon in plain view, in a location where gambling paraphernalia could reasonably have been expected to be found, and where it was not necessary to conduct a general exploratory search.

Both *Gray,* a 1973 Sixth Circuit case, and *Truitt,* a 1975 Sixth Circuit case, have similar fact situations, but *Truitt* did not follow *Gray's* holding that the rifles were illegally seized because they were neither specifically itemized on the search warrant nor had a nexus with items to be seized. *Truitt* held that the sawed-off shotgun was legally seized, even though it was neither specifically itemized in the search warrant nor had a nexus with items to be seized. That Court relied upon *Coolidge v. New Hampshire, supra.*

In explaining the "plain view" doctrine, *Coolidge* stated that the evidence seized must be "an incriminating object." The police must have probable cause to believe that the object is incriminating. The *Truitt* court concluded that the "plain view" doctrine operates only to excuse the necessity of a warrant; the concomitant requirement of probable cause is not altered. Thus, the question is whether probable cause existed to confiscate the gun when it was first discovered. 521 *F.* 2d at 1176. *Truitt* found that probable cause to believe the sawed-off shotgun was incriminating did exist.

■ *Carroll v. U. S.,* 267 *U. S.* 132, 45 *S. Ct.* 280, 69 *L. Ed.* 543 (1925), teaches that probable cause exists where "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient within themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.

■ Police officers are held to "a standard not of after-acquired statistical probability, but to the conduct of 'reasonable men, acting on facts leading sensibly to their conclusions of probability.'" *U. S. v. Truitt, supra* 521 *F.* 2d at 1177, citing *Brinegar v. U. S.,* 338 *U. S.* 160, 69 *S. Ct.* 1302, 93 *L. Ed.* 1879 (1949). If the discovery of the loaded pistol under the circumstances of this particular search warranted the officer's reasonable belief that its possession was an offense, or that it was a threat to the safety of the officers if not seized, then its seizure is valid.

The recent Supreme Court decision of *State in the Interest of H.B.,* 75 *N. J.* 243 (1977), bears on the situation involving discovery of loaded guns during police searches. There, Chief Justice Hughes emphasized the danger to police officers presented by the proliferation of handguns possessed by numerous citizens, including many violent criminals. The relevance of the dangers of possession of handguns is seen in our Chief Justice's reliance on the landmark case of *Terry v. Ohio,* 392 *U. S.* 1, 88 *S. Ct.* 1868, 20 *L. Ed.* 2d 889 (1968), in which Chief Justice Warren said:

American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.

While Chief Justice Hughes was primarily concerned with the dangers to police officers in a stop-and-frisk situation, his opinion reflects the omnipresent concern for "the violent climate of the times and the universal threat of handguns."

In the present case we deal with a search for drugs with a valid warrant based upon a legal wiretap. We well know that weapons can be an instrumentality in drug related offenses. The search party numbered approximately ten police officers, several of whom entered defendant's premises with drawn guns. This emphasizes their awareness of the dangers they faced, and underscores their legitimate desire for self protection.

Retaliation by the suspects could have resulted in an attack on the police had the weapons been left in the suspect's possession. Working under this vulnerability, the officers could not turn their backs and walk out of defendant's house leaving a loaded gun behind.

Balancing the legitimate concern for the safety of a police officer against the intrusion into personal liberty was recently examined by the United States Supreme Court in *Commonwealth of Pennsylvania v. Mimms,* —— *U. S.* ——, 98 *S. Ct.* 330, 54 *L. Ed.* 2d 331 (1977). There, the police officer asked the driver to get out of the car after he was stopped for driving an automobile with an expired license plate. As the driver got out of the car the officer saw a bulge in his clothing and conducted a pat-down search during which he found a loaded gun. The Pennsylvania Supreme Court reversed defendant's conviction on a firearms charge and held that the seizure violated his Fourth Amendment rights.

The United States Supreme Court, in upholding defendant's conviction, explained that "(t)he touchstone of [its] analysis under the Fourth Amendment is always 'the reasonableness in the circumstances of the particular governmental invasion'". —— *U. S.* ——, ——, 98 *S. Ct.* 330, 332, 54 *L. Ed.* 2d 331, 335. It noted that "(u)nder the standard enunciated in [*Terry v. Ohio,* 392 *U. S.* 1, 88 *S. Ct.* 1868, 20 *L. Ed.* 2d 889 (1968)]—whether 'the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action was appropriate'—there is little question

the officer was justified." —— *U. S.* ——, ——, 98 *S. Ct.* 330, 333, 54 *L. Ed.* 2d 331, 337.

This court holds that sufficient probable cause existed to warrant the police officers' belief that the loaded pistol, found in plain view, and the rifles voluntarily surrendered, could be used to injure one of the officers present, therefore, the guns were properly seized. The routine check of the serial numbers resulting in the discovery that the pistol was stolen was permissible. The possession of a stolen gun is a crime, and the police properly arrested defendant on the day following the seizure for possession of stolen property. *N. J. S. A.* 2A:151-56. The motion for suppression of evidence and return of property is denied.