**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Dennis R. SZYMKOWIAK,**
**Defendant-Appellant.**

**No. 83–3364.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 29, 1983.

Decided Feb. 8, 1984.

Jeffrey I. Goldstein, Lorin J. Zaner (argued), Goldstein & Zaner, Toledo, Ohio, for defendant-appellant.

Frederick H. McDonald (argued), Asst. U.S. Atty., Toledo, Ohio, for plaintiff-appellee.

Before MARTIN and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

This case is presently before the Court upon Dennis Szymkowiak's appeal from his conviction for possession of an unregistered weapon in violation of 26 U.S.C. § 5861(d) and § 5871. Szymkowiak contends that the district court erred in failing to suppress the weapon, the seizure of which should not have been excused under the "plain view" exception to the Fourth Amendment warrant requirement. Upon consideration of the issues presented by this appeal, we agree that the weapon was unlawfully seized and therefore vacate the district court's judgment.

On February 22, 1982, Toledo police officers obtained a warrant to search Szymkowiak's apartment for specified items of jewelry and a T.V. set. Detective John Connors and four other Toledo policemen executed the warrant. They did not find the jewelry or the T.V. The officers did, however, discover and seize two weapons. The firearms were not mentioned in the warrant and the officers did not anticipate that they would be found on the premises.

Detective Higbie entered a safe in the bedroom where he found jewelry, guns and ammunition clips. He removed these items to the living room. While searching the dining room area, Officer Gerken found an AR–15 weapon next to the couch. On the floor next to the couch, Gerken found a case which contained ammunition for the weapon. After looking at the AR–15 and the other firearms, the officers could not determine whether the guns seized were designed or specifically adapted to fire a succession of bullets. They therefore could not determine whether possession of these guns was illegal.

The officers called the Bureau of Alcohol, Tobacco and Firearms (ATF) and asked Agent Haverstick to come to the apartment to look at the firearms. Haverstick, arriving at the apartment about thirty minutes later, stated that possession of the guns was not in violation of federal law, but was probably in violation of Ohio state law. The officers testified that the guns contained no clips and were not reported as stolen. Haverstick further stated that he could not clearly determine without disassembling the firearms whether they had been illegally adapted for fully automatic performance. The officers decided to seize the guns, based upon Haverstick's recommendation.

Szymkowiak thereafter was charged with unlawful possession of two automatic weapons, a R PB Industries pistol, SM 10 model (count I) and a Colt AR–15 rifle (Count II). The latter weapon is relevant to this appeal. Appellant moved to suppress the rifle on the theory that it had been seized from his apartment in violation of the Fourth Amendment. United States Magistrate James G. Carr conducted a hearing on the Motion to Suppress. On December 14, 1982, the magistrate issued a report and recommendation, finding that the weapon had been lawfully seized pursuant to the "plain view" exception to the warrant requirement. Appellant filed objections to the magistrate's report and recommendation. District Judge Don J. Young, however, adopted the magistrate's recommendation to deny the Motion to Suppress and held that the officers in this case complied with the requirements of the "plain view" exception to the warrant requirement. We disagree.

The "plain view" exception to the warrant requirement was first explored in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In that plurality opinion, the Supreme Court stated that in order to seize evidence pursuant to the "plain view" exception, executing officers must show, (1) a prior valid intrusion, (2) an inadvertent discovery, and (3) that the evidence of an unlawful act was "immediately apparent" to them. This Court has completely adopted the *Coolidge*

analysis. *See e.g. United States v. Gray,* 484 F.2d 352 (6th Cir.1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974); *United States v. Truitt,* 521 F.2d 1174 (6th Cir.1975). Appellant concedes that the executing officers' prior intrusion was valid and that their discovery of the weapon was inadvertent.

The issue before us, therefore, is whether Szymkowiak's criminality was "immediately apparent" to the officers from their "plain view" of the seized weapon. In *Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the Supreme Court most recently had occasion to consider this "immediately apparent" test. In *Brown,* the seizing officer validly stopped an automobile as part of a routine license check and inadvertently discovered a knotted party-balloon suspiciously placed in between the driver's fingers. The Supreme Court, confronted with these facts, held that the criminal nature of the seized object was "immediately apparent" in light of the officer's particular experience with the wide use of such balloons to carry narcotics. Although a majority of the Court joined in this judgment, only two justices concurred in the Court's reasoning.

In its plurality opinion, the Court reasoned that the "plain view" exception is an extension of the Fourth Amendment's "probable cause" requirement. 103 S.Ct. at 1543. Justice Rehnquist stated:

> [t]he seizure of property in plain view involves no invasion of privacy and is *presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.*

103 S.Ct. at 1543; *quoting, Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). Thus to the extent that *Brown* has any precedential weight at all, it stands for the proposition that evidence in *plain view* may be seized where the executing officers have "probable cause" to believe that a nexus exists between the viewed item and criminal activity. In *Brown,* a majority of the Supreme Court agreed that such a nexus was "immediately apparent" to the executing officer because no "innocent item" is "commonly carried in uninflated, tied-off balloons." 103 S.Ct. at 1545 (Powell, J. Concurring).

The *Brown* decision's formulation of the "immediately apparent" test is consistent with this Court's earlier pronouncements of that test in *Gray,* 484 F.2d at 352 and *Truitt,* 521 F.2d at 1174. In *Gray,* we declared unconstitutional the seizure of rifles inadvertently discovered by officers while they executed a valid search warrant for alcoholic beverages. In that case, the police removed the rifles from the defendant's closet, examined them, copied down their serial numbers and seized them. We concluded first that the incriminating nature of the seized evidence was not "apparent" to the officers:

> The rifles were not contraband; there was no nexus between the rifles and the crimes of selling and possessing intoxicating liquor without a license. . . .

484 F.2d at 355. Even if the incriminating nature of the rifles had been "apparent," the *Gray* Court concluded, the appearance of criminality was not "immediate." We found that

> the officers *at that time* [did not] have any knowledge of any other crimes. It was only after Trooper Brodt had seized the weapons, copied down the serial numbers, left the defendant's premises, and then ran the information taken off the rifles through the National Crime Information Center that he learned that they were stolen and hence incriminating. (emphasis added).

484 F.2d at 355.

In *United States v. Truitt,* we reiterated these general guidelines to the "plain view" exception, but upheld the seizure of evidence under the particular facts of that case. While conducting a lawful search, the executing officers in that case inadvertently discovered a sawed-off shotgun. This Court concluded that probable cause was "immediately apparent" to those officers from the particular nature of the viewed object and the circumstances of its discovery. We stated that *Coolidge*

fully provides the justification for the seizure of the shot-gun if that shot-gun can qualify as "an incriminating object" found under circumstances where "it is immediately apparent to the police that they have evidence before them."

Unlike the officers in *Gray,* 521 F.2d at 1174, the executing officers in *Truitt* could reasonably derive probable cause to believe that the seized evidence was incriminating from the very moment they "first discovered" the "intrinsically" suspicious evidence. 521 F.2d at 1176–1177. The officers' knowledge of the incriminating nature of the shot-gun in *Truitt,* then, was "immediate." Moreover, we concluded in *Truitt* that the criminal nature of the possession of a sawed-off shotgun was "apparent" from the mere discovery of the object:

a sawed-off shotgun in private hands is not an intrinsically innocent object. The possession of it is a serious crime, except under extraordinary circumstances.

521 F.2d at 1174; citing, *Porter v. United States,* 335 F.2d 602, 607 (9th Cir.), *cert. denied,* 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574 (1964). In contrast to the seizure in *Gray,* the seizure in *Truitt* was accomplished in a circumstance in which probable cause was both "immediate" and "apparent" to the officers from the intrinsic nature of the object.

■ The standard which we have gleaned from *Gray, Truitt,* and *Brown,* therefore, requires a reviewing court to determine whether, under the circumstances of each case, probable cause was both "immediate" and "apparent" to the executing officers from the nature of the object viewed. We believe that this standard is mindful of the Supreme Court's constant warning that any exception to the Fourth Amendment's Warrant Clause be "carefully delineated." *Brown,* 103 S.Ct. at 1544 (Powell, J. Concurring); *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

The requirement that probable cause be "immediate" from the discovery of the object specifically averts the "danger inherent in such a situation that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will." *See Brown,* 103 S.Ct. at 1546, (Stevens, J. Concurring). As a reviewing court, we best obviate the risk of prolonged, warrantless rummaging by objectively determining whether *at the time* of discovery the officer had probable cause to connect the item with criminal behavior. *Brown,* 103 S.Ct. at 1546. To prevent any such abuses of the warrant requirement, we must also ensure that probable cause be "apparent" to the executing officers at the time of discovery. In considering whether probable cause was "apparent" to the executing officers, a reviewing court should be duly mindful of the executing officers' particular, subjective training and experiences. *See Brown,* 103 S.Ct. 1545 (Powell, J., Concurring); *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Where an executing officer's probable cause to connect the viewed item with criminal behavior is not *both* "immediate" and "apparent," however, the individual's interests in retaining possession of property and in maintaining privacy, *see Brown,* 103 S.Ct. at 1546, and society's interest in lawful enforcement activity, *see Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), are greatly compromised.

■ After a careful examination of the controlling case law, the applicable policies and the record in this case, we conclude that the executing officers' probable cause to connect the seized weapon with criminal activity was neither "immediate" nor "apparent." The incriminating nature of the evidence seized was at no time "apparent" to the seizing officers or agents. We note initially that no "nexus" whatsoever exists between the seized weapon and the items particularized on the search warrant. *See United States v. Gray,* 484 F.2d at 355. Further, our review of the record indicates that even ATF agent Haverstick did not

have probable cause to believe from the *intrinsic nature* of the seized weapon that the evidence was incriminating. Haverstick, a firearms expert, testified that he believed that possession of such a weapon was not a federal offense. He also stated that he could not determine from the exterior of the weapon whether its possession violated Ohio law. The possession of an automatic firearm in Ohio violates O.R.C. § 2923.17. But Agent Haverstick testified that he "could not say *at the time*" that he examined the weapon whether it was an automatic firearm. (Transcript p. 65). He further testified that he could not determine from his examination of the evidence whether it was specifically adapted for automatic performance. (Transcript pp. 77–80). After Haverstick's expert examination of the seized weapon, he was able to determine that the firearm's possession was not violative of federal law and was not able to determine that its possession violated Ohio law.

While we recognize that "probable cause" is not proof beyond a "reasonable doubt," *see Truitt,* 521 F.2d at 1177, and is a "flexible, common-sense standard," *see, Brown,* 103 S.Ct. at 1543, we are unable to find under the circumstances of this case that, even at the late stage of the ATF expert examination of the weapons, probable cause was "apparent" from the intrinsic nature of the evidence. Unlike the appearance of the intrinsically incriminating sawed-off shotgun in *Truitt,* or the knotted balloon in *Brown,* then, the appearance of the seized weapon in this case did not provide even a firearms expert with probable cause for the seizure. When an *expert* in the firearms field is unable to associate discovered evidence with criminal activity without actually disassembling the evidence, we can hardly say that probable cause would be "apparent" to an officer of *"reasonable"* caution from the evidence itself. *Brown,* 103 S.Ct. at 1543.

Yet, even if probable cause of criminality were "apparent" to the ATF expert, such probable cause clearly was not "immediately" so. The record in this case is clear that the executing officers who discovered the weapon could not *"at the time"* of discovery determine whether its possession was unlawful. *See Gray,* 484 F.2d at 356. Like the officers in *Gray,* the executing officers copied down and called in the firearms' serial numbers to determine whether the weapons were stolen. Like the officers in *Gray,* the executing officers also found through NCIC that the seized rifle had not been stolen. Finally, like the officers in *Gray,* the executing officers did not have probable cause to believe that the possession of such a rifle was incriminating. In *Brown,* the Supreme Court noted that probable cause "requires that the facts *available to the officer*" would warrant that officer to believe that he or she may have discovered incriminating evidence. 103 S.Ct. at 1543. From the "facts available" to the executing officers in the case before us, they could not determine whether they had discovered evidence of a criminal nature. Indeed the officers very decisions to call NCIC for facts not available to them and to call ATF for an examination which was beyond their knowledge to perform, indicate that they did not from the "facts available to them" *see Brown,* 103 S.Ct. at 1543, "at the time," *See, Gray,* 484 F.2d at 356, of discovery have probable cause to believe that the firearm was incriminating. Under these circumstances, we can not conclude that the officers' probable cause derived "immediately" from the discovery of the object.

Because we conclude that probable cause of criminal activity was neither "immediate" nor "apparent" to the officers from the discovery of the firearm, we hold that the seizure of that evidence in this case violated the Fourth Amendment.

Accordingly, we conclude that the Motion to Suppress should have been granted and we hereby VACATE the conviction.