838 F.2d 1216
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Herbert Bruce SPENCER, Defendant-Appellant
 No. 87-5169.
 United States Court of Appeals, Sixth Circuit.
 Feb. 11, 1988.
 
 Before MERRITT and RYAN, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 Defendant was convicted in the District Court of several offenses under Title 21 of the United States Code growing out of an alleged conspiracy to manufacture and distribute methamphetamine, a Schedule II controlled substance. He appeals principally on grounds that the District Court erred in failing to suppress evidence against him obtained as the result of unconstitutional searches and seizures, and on grounds that his trial was unfair due to improper prosecutorial questioning and to the admission of unsubstantiated testimony regarding prior drug transactions.
 
 I.
 
 2
 On March 6 and 7, 1986, federal and Kentucky officers searched two buildings--a home and nearby commercial structure--owned by the defendant in McCreary County in eastern Kentucky. A warrant issued by a federal magistrate authorized search of the "right half" of the blue metal commercial building for the following items: methamphetamine, a methamphetamine precursor called P2 P, other precursor or derivative chemicals, laboratory apparatus, records, formulas, notes, currency, negotiable instruments, and two late-model automobiles, a Lincoln Town Car and a 1984 Cadillac Eldorado.
 
 
 3
 Upon search of the authorized right-hand area, the officers found the laboratory apparatus and a blue 55-gallon chemical drum that later proved to contain P2 P. The defendant then informed the officers that the sought-for Cadillac was in the left-hand side of the metal building, which purportedly was being used as a repair shop of some kind; he then gave his consent for entry to seize the car. The officers entered the left-hand side and, while inspecting the car--in which they found a small quantity of methamphetamine--spotted two other 55-gallon drums apparently identical to that found on the "laboratory" side of the partition. These two drums were then also seized.
 
 
 4
 Shortly thereafter, the authorities obtained a state search warrant for the nearby Spencer residence to seize "the luggage and personal belongings" of William Wolk, an alleged member of the drug conspriacy whose body was found in the Spencer residence a few days before March 6 and who was the owner of the Cadillac. They also extended their search of the left-hand side of the metal building to its attic, which could be reached only by pulling down a trap-door ladder on the ceiling of the left-hand side and climbing up. In the attic they found various burglary paraphernalia, which were not later introduced at Spencer's trial, and three handguns with filed-off serial numbers, which were introduced over defense objection.
 
 
 5
 When agents entered the house, they discovered the defendant's wife, Mrs. Alberta Spencer, burning a variety of papers in the bathroom. An extensive two-day search of the house produced none of the sought-for belongings of Wolk, but did turn up large quantities of cash, jewelry, a $100,000 certificate of deposit and bank records. They also found quantities of methamphetamine and cocaine in the garage attached to the Spencer home.
 
 II.
 
 6
 Spencer's first major argument is that his conviction was obtained by means of evidence obtained by unconstitutional searches and seizures. This argument can be divided into three groups of evidence--the "left-hand" drums, the fruits of the state search warrant, and the guns taken from the attic.
 
 
 7
 Spencer has not argued that the federal warrant was invalid, and he concedes that the federal agents had a right to enter the "left-hand" portion of the metal building as a result of his consent to their entry for the limited purpose of seizing the Wolk Cadillac. He argues, rather, that the seizure of the two drums on that side was not encompassed by the "plain view" exception to the ordinary Fourth Amendment requirement for a warrant. We disagree.
 
 
 8
 In Texas v. Brown, 460 U.S. 730 (1983), a majority of the Supreme Court embraced the "plain view" doctrine first advanced by a four-Justice plurality in Coolidge v. New Hampshire, 403 U.S. 495 (1971), and subsequently adopted throughout the circuits. See, e.g., United States v. Truitt, 521 F.2d 1174 (6th Cir.1975); see generally Texas v. Brown, 460 U.S. at 747 n. 2 (Powell and Blackmun, Jj., concurring). Although the analytical justifications for the doctrine vary, plain view may be viewed either as an "exception" to the Warrant Clause or as an "extension" which provides grounds for seizure of an item when an officer's access to that item "has some prior justification under the Fourth Amendment." Texas v. Brown, 460 U.S. at 739. The doctrine also incorporates the practical considerations that "requiring police to obtain a warrant once they have obtained a first-hand perception of contraband, stolen property, or incriminating evidence generally would be a 'needless inconvenience' that might involve danger to the police and public." Id. at 740 (quoting Coolidge, 403 U.S. at 468) (citation omitted).
 
 
 9
 In this case, the federal agent who entered the left-hand side of the building to search and seize the auto was lawfully and non-pretextually on the premises by virtue of Spencer's consent; thus his "access" to the two blue drums was justified under the Fourth Amendment. Agent Malone testified that he could see the drums against the back wall in an unobscured line of vision from the front of the building, where he was lawfully positioned to view the Cadillac. App. 65. From that vantage point, the two blue plastic drums appeared "similar or almost identical" to the drum already seized on the right-hand side. App. 67. Malone had opened the drum earlier seized and had previously been told by an informant that the drum contained P2 P. Relying further on his experience and familiarity with the types of apparatus and paraphernalia employed to manufacture methamphetamine, II. App. 34, Malone further stated that he didn't "recall ever seeing a drum that color and of that material for anything other than what I had seen earlier, which contained P2 P." App. 68. On closer inspection, the drums "were identical to the ones I had previously seen. They were sealed, had not been opened, the best I can determine. They had the same kind of markings on them and everything." In his opinion, the three barrels were "identical in every aspect, appearance-wise." App. 69.
 
 
 10
 Probable cause is the standard of suspicion sufficient to sustain a "plain view" seizure. See Texas v. Brown, 460 U.S. at 742-43 & n. 7 (plurality), 747 (concurrence). The Supreme Court has recognized that, in formulating these practical judgments, the police may rely on their training and experience to draw inferences and deductions such as those reasonably drawn by Agent Malone here. See id. at 743-44 (plurality), 747 (concurrence). Malone's suspicions were supported by probable cause; the plain-view doctrine applies here.
 
 
 11
 Spencer next argues that the state warrant was not based on probable cause and that, in any event, the items seized far exceeded the scope of that authorized by the warrant. Again we disagree. The information supporting the warrant appears to satisfy the flexible, nontechnical, practical and common-sense standards that characterize our notion of probable cause. See Brinegar v. United States, 338 U.S. 160, 176 (1949); Carroll v. United States, 267 U.S. 132 (1925). And the warrant certainly satisfies the good faith standard of United States v. Leon, 468 U.S. 897 (1984).
 
 
 12
 Because the warrant identified the personal "belongings" of Mr. Wolk among the items to be seized, intrusion into small spaces was authorized. Once into those small spaces, the agents encountered materials of evidentiary significance in the case, including bank records, a certificate of deposit and other belongings of the defendant or Mrs. Spencer. It is true that the warrant specified only belongings of Mr. Wolk, not of the Spencers, as among the items to be seized. The items seized, however, were "incriminating evidence" within the meaning of the "plain view" doctrine discussed above. And the authorization provided by the "plain view" exception and by the warrant could only have been enhanced by the exigent circumstances created by the discovery of Mrs. Spencer's bathroom destruction of possible evidence. See Cupp v. Murphy, 412 U.S. 291, 297 (1973); cf. Welsh v. Wisconsin, 466 U.S. 740 (1984) (narrow scope to exigent-circumstances doctrine when intrusion into home is without a warrant and for a minor crime).
 
 
 13
 Spencer's final Fourth Amendment argument is directed at the guns, which were seized from the attic which he argues agents had no right to enter without obtaining a further warrant. Upon review of the relevant record in this case, we have concluded that it is unnecessary to reach the merits of this argument and that the District Court correctly ruled that Spencer waived his right to object to introduction of the guns on this ground.
 
 
 14
 At Spencer's detention hearing, an agent testified that the guns in question were found in the attic. App. 42. Spencer's counsel moved pretrial to suppress "certain items ... recovered from areas not covered by the said search warrant: namely, from the left section of the building.... Items recovered from the left section of the building include those found inside a Cadillac vehicle." App. 46. Neither in their papers nor in oral argument did Spencer's counsel make any reference at all to the attic or to the guns. The magistrate's report and recommendation that this motion be denied, which was later adopted by the District Court, made no reference to the attic or guns. In his objection to the magistrate's report, Spencer did not raise the issue. At trial, defense counsel moved in limine to exclude the guns from evidence, but only on grounds of relevance. II App. 1-4. When the guns were moved into evidence and shown to the jury, counsel represented to the court that its ground for objecting was "the previous objection, and--That's all," referring to the relevance ground. II App. 117. Only after the guns had been shown to the jury did counsel first raise the attic issue following a motion for mistrial. Under these circumstances, we believe that the District Court correctly ruled that Spencer's motion was untimely both as a matter of orderly criminal procedure, Fed.R.Crim.P. 12, 41, and for failure to follow the rule regarding objections to findings by the magistrate set forth in Thomas v. Arn, 474 U.S. 140 (1985). Spencer's argument before this Court that his counsel did not know of the details of the search of the metal building due to selective prosecutorial disclosure under rule 16 is belied by the testimony placed on the record in the detention hearing.
 
 III.
 
 15
 Defendant's other main contention is that the Government introduced unduly prejudicial evidence of prior drug transactions in which he was involved. Spencer testified that he was ignorant of the activities engaged in by others in the leased portion of the metal building, and also that he was a legitimate businessman with no knowledge of drug transactions.
 
 
 16
 To impeach this testimony, the United States questioned Spencer directly about prior drug transactions with a man named Chester Allison, which Spencer denied, and then called Allison as a rebuttal witness to testify about a series of marijuana and other drug transactions he engaged in with Spencer from 1980 to 1982, many of which involved the metal building at issue in this case. III App. 396-97. The Government also offered the guns, cash, valuable jewelry and Spencer's tax returns as evidence to corroborate the maintenance of a drug enterprise. We view this evidence as proper impeachment, relevant and not unduly prejudicial. To the extent it reflected evidence of prior crimes or wrongs, it was properly admitted to prove knowledge or intent. Fed.R.Evid. 404(b).
 
 
 17
 Spencer's remaining objections to the fairness of his trial do not raise substantial questions affecting his Fifth or Sixth Amendment rights. The judgment of the District Court is affirmed.