240 N.J. Super. 206 (1990)
572 A.2d 1200
CHARLES HOFFMAN, PLAINTIFF,
v.
UNION COUNTY PROSECUTOR AND RAHWAY POLICE DEPARTMENT, DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided January 30, 1990.
*207 Robert J. Jeney, Jr., for plaintiff (Vitiello, Seltzer, Terkowitz & Vitiello, attorneys).
Harold Knox, for defendant Union County Prosecutor (John Stamler, Prosecutor of Union County, attorney).
Louis N. Rainone, for defendant Rahway Police Department (Karcher, McDonnell, Rainone & Aftanski, attorneys).
*208 DeSTEFANO, J.S.C.
Mr. Hoffman brings this action for replevin seeking return of his rifles, shotguns and a Japanese saber turned over to the Rahway Police Department by his wife, Carol. The Union County Prosecutor counterclaims seeking revocation of his New Jersey firearms purchaser identification card.
On June 28, 1987, members of the Rahway Police Department responded to a call relative to the Hoffman residence. Plaintiff's son and wife were involved in a domestic dispute. Mrs. Hoffman asked the police to remove her husband's weapons from the premises to ensure her safety. The Union County Prosecutor issued a policy directive on July 25, 1985 to all police chiefs of Union County concerning firearms seized in connection with domestic violence incidents. Prosecutor Stamler stated, "Police Officers responding to domestic violence calls should inquire whether the accused possesses any firearms. If so, the firearms should be kept for safe keeping." No domestic violence complaint was filed. Plaintiff was not home during this incident, and his weapons were not used. The weapons have remained in the custody of the State.
On November 4, 1971, a New Jersey firearms purchaser identification card had been issued to Mr. Hoffman as the lawful owner of:
(1) 12 gauge Browning shotgun
(2) 30-06 Remington rifle
(3) 12 gauge Remington shotgun
(4) 12 gauge Richard shotgun
(5) 22 caliber Winchester rifle
(6) Mauser rifle
(7) 22 caliber Stevens rifle
(8) 12 gauge Fox Savage shotgun
(9) 1 Japanese saber
Since the issuance of that card, the following events occurred. On January 21, 1982, plaintiff was convicted, before the Roselle Park Municipal Court, for a violation of N.J.S.A. 2C:12-1(a)(1) when he assaulted Louise Woolever.
*209 On September 19, 1982, plaintiff was arrested for assaulting Police Officer Thomas Boyd of the Elizabeth Police Department. Officer Boyd and his partner had responded to a call regarding a barroom brawl. Plaintiff interjected himself into the altercation, threw a punch at Officer Boyd and missed. Plaintiff's arrest and counterclaims against the police followed. All charges were dismissed by the Elizabeth Municipal Court.
On December 7 and 12, 1982, the Rahway Police went to plaintiff's home in response to a call regarding a domestic dispute. On both occasions Mr. Hoffman came home intoxicated and had an argument with his wife. No complaints were filed.
On July 30, 1983, plaintiff engaged in a street fight. He was taken to Rahway Hospital for treatment. At the hospital, Mr. Hoffman threatened to use one of his shotguns against the individual who hit him. No charges were lodged.
On December 19, 1983, the Rahway Police responded to a call regarding a domestic dispute at plaintiff's home. Once again, he came home intoxicated and was harassing his wife. No complaints were filed.
On May 4, 1984, plaintiff was arrested by the Rahway Police Department for possession of a weapon, N.J.S.A. 2C:39-3(e), and aggravated assault, N.J.S.A. 2C:12-1(b). Two juveniles allegedly threw rocks at Mr. Hoffman's son's car. Plaintiff, his son and another male subsequently confronted the juveniles. Mr. Hoffman was armed with a pipe. Police Lt. William O'Leary was on the scene. O'Leary intervened after a fight broke out between the adults and the juveniles. Police backup units arrived. O'Leary was on the ground shielding one of the juveniles who had just been kicked by plaintiff's son. Mr. Hoffman, pipe in hand, loomed over the lieutenant and the juvenile. Although Hoffman swung the pipe, fortunately, no one was struck. Plaintiff testified that he was trying to protect O'Leary. All charges were referred to the grand jury, no billed *210 and remanded as disorderly conduct, N.J.S.A. 2C:33-2; to which plaintiff was found guilty.
On April 16, 1986, Mr. Hoffman was arrested by the Rahway Police for striking his wife's face, and beating her head against a wall at the marital home. He was intoxicated at the time of the assault. Mr. Hoffman pled guilty to assault in violation of N.J.S.A. 2C:12-1.a(1), and was fined $250.
On June 18, 1988, the Rahway Police responded to a call regarding a domestic dispute at plaintiff's home. The police found both Mr. and Mrs. Hoffman intoxicated and arguing. Order was restored, no arrests were made.
The Rahway Police, responding to a call, went to the Hoffman home shortly after June 18, 1988. It was reported that someone in the Hoffman home was cursing at kindergarten children who were passing by the house.
Mr. Hoffman candidly admits having an alcohol abuse problem. He testified that he had not consumed alcohol for the last six months. Plaintiff remains married to his wife Carol, is self employed, and maintains that he uses the guns for hunting. The operable Mauser rifle and Japanese saber are antiques.
Plaintiff argues that his weapons were taken for safe-keeping. They were not seized as evidence of a crime or forfeited for unlawful use under N.J.S.A. 2C:64-1. See State v. One (1) 1979 Chevrolet Camaro Z-28, 202 N.J. Super. 222, 494 A.2d 816 (App.Div. 1985). The State has come into possession of his firearms without benefit of a search warrant, court order or any legal process. It must be noted at the outset that plaintiff is being denied only temporary possession of his weapons, while the court determines his continued fitness to possess them.
Defendant in State v. Cunningham, 186 N.J. Super. 502, 453 A.2d 239 (App.Div. 1982), was arrested for shooting his wife with a handgun in their home. The charge was no billed by the grand jury. Cunningham thereafter moved for the return of his handgun and a rifle also seized by the police after the shooting.
*211 The Appellate Division recognized that there are circumstances when, without a gun being used unlawfully, the police would be authorized to seize the weapon to protect the public from danger. The court stated:
Clearly, the statutory design is to prevent firearms from coming into the hands of persons likely to pose a danger to the public. It seeks to achieve this result by providing for the revocation of a firearms purchaser identification card when its possessor has become disqualified under N.J.S.A. 2C:58-3(c) subsequent to the issuance of the card. We note that forfeiture is another remedy that can be invoked, in an appropriate case. Forfeiture applies when a gun is possessed or used for a criminal purpose, whether or not its owner has been convicted. But we can imagine many circumstances when, without the owner using a gun unlawfully, the police would be authorized to seize a gun in order to protect the public from danger. This might be done as a parallel to the exercise of the common law right to abate a nuisance summarily when the safety of the public is threatened. This could occur, for example, if an owner carelessly allowed his children to play with a loaded gun, or if an owner became insane and was carelessly handling a gun, resulting in a threat to the public safety. Such conduct would not be criminal, but would justify the denial of a permit to acquire a gun. To further the legislative policy, we conclude that the police need not return a gun to its owner in such a case, although the owner had not used the gun unlawfully and no one had yet been injured. But the owner would have the right to a hearing to determine if he is disqualified on the standards of N.J.S.A. 2C:58-3(c) from receiving the gun. [at 511-513, 453 A.2d 239; emphasis supplied]
The dissent in Cunningham was concerned with the paucity of criteria for determining when a police seizure of a weapon from its legal owner is "lawful" in the sense that it would require the owner to obtain a new permit in order to recover his property. The dissent was critical of the majority for inventing a procedure which has no statutory support and is based upon standards that are vague and unworkable.
In Re Delany, 144 N.J. Super. 483, 366 A.2d 350 (App.Div. 1976), was the flip side of Cunningham. The Delany court found no legal basis for the revocation of any permit or forfeiture of handguns, absent a criminally unlawful act. The court in Delany cited the Supreme Court decision of Sawran v. Lennon, 19 N.J. 606, 118 A.2d 10 (1955). In Sawran, Chief Justice Vanderbilt held that defendants who had been found guilty of hunting with an illegal missile, e.g., buckshot, hunting *212 for wild deer with firearms out of season, and having in their possession a wild deer out of season, committed quasi-criminal violations which did not subject defendants to forfeiture of their weapons under N.J.S.A. 2A:151-16, the predecessor to N.J.S.A. 2C:58-1 et seq.
In all reported decisions, of which this court is aware, there was some underlying criminal behavior that triggered the police seizure of the weapons. Sawran v. Lennon, supra; State v. One Wrist Sling Shot, 230 N.J. Super. 498, 553 A.2d 1352 (App.Div. 1989); State v. Cunningham, supra; In Re Delany, supra; In Re Sbitani, 212 N.J. Super. 266, 514 A.2d 873 (Law Div. 1986); State v. Completo, 146 N.J. Super. 548, 370 A.2d 95 (Law Div. 1977).
This court is first called upon to determine whether the seizure in this case is lawful under the authority of State v. Cunningham, supra, and therefore, need not be based on underlying criminal activity?
Lawful is defined as,
legal; warranted or authorized by the law; having the qualifications prescribed by law; not contrary to or forbidden by the law.... To say of an act that it is `lawful' implies that it is authorized, sanctioned or in any rate not forbidden, by law .... further the word `lawful' more clearly implies an ethical content than does `legal.'
The latter goes no further than to denote compliance, with positive, technical or formal rule; while the former usually imports a moral substance or ethical permissibility. Black's Law Dictionary (4 ed. 1968) at 1032.
The police were called to the Hoffman residence because of a domestic violence complaint. Police officers are encountering domestic violence situations with increasing regularity. The Legislature has found that "domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured, and in some cases even killed by their spouses or cohabitants." N.J.S.A. 2C:25-2. Police officers are required to make on the scene evaluations and take appropriate action based upon common sense and *213 common experience. State v. Scott, 156 N.J. Super. 421, 383 A.2d 1210 (Law Div. 1978). When confronted with Mrs. Hoffman's request to take her husband's weapons from the premises, and the fact that a dispute had just taken place between Mrs. Hoffman and her son, common sense would dictate that weapons be removed from a house where domestic violence is ongoing. The officers' concern for Mrs. Hoffman's safety, as well as her own concern, was reasonable and prudent. The police conduct was not overreaching or offensive. State v. Novembrino, 200 N.J. Super. 229, 491 A.2d 37 (App.Div. 1982).
The Legislature has gone to great pains to deal with the growing problem of domestic violence in our society. A violent cohabitant may be ejected from one's home upon an ex parte application, N.J.S.A. 2C:25-14. Denying plaintiff temporary possession of his guns, while the court determines his fitness to own them, is certainly a lesser intrusion. There is, of course, a major difference between police taking someone's weapons without prior judicial approval, and removing someone from his home with judicial approval. If, for the sake of an argument, the police did act improperly in seizing plaintiff's weapons, what should the remedy be? The court notes that this is a civil proceeding and the exclusionary rule is not applicable. Delguidice v. N.J. Racing Commission, 100 N.J. 79, 494 A.2d 1007 (1985). Should the court suppress the State's defenses and dismiss the answer and counterclaim without allowing the State an opportunity to present evidence of Mr. Hoffman's continued unfitness to own a weapon? See City of New Brunswick v. Ronald Speights, 157 N.J. Super. 9, 384 A.2d 225 (Law Div. 1978). Was the police conduct in this case so egregious that we would really want to discourage such conduct in the future, or should the system wait for actual harm to occur and then assess culpability after the fact! After all, Mr. Hoffman was not engaged in violence  that night. State v. Kelly, 97 N.J. 178, 478 A.2d 364 (1984).
This court finds that Mr. Hoffman has been involved in a pattern of violent behavior and alcohol abuse since 1982. He *214 has assaulted police, an adult female and juveniles. There is a disturbing pattern of domestic violence including a disorderly persons conviction for assault against Mrs. Hoffman. Plaintiff has, on at least one occasion, threatened to use one of his guns against another. Indeed, he has already used a pipe in one episode. The Rahway Police have been repeated visitors to the Hoffman home. The police officers responding on the night in question had the following options: ignore Mrs. Hoffman's request, seize the weapons, urge Mrs. Hoffman to file a domestic violence complaint against her son, or if probable cause was present, arrest the younger Hoffman, N.J.S.A. 2C:25-5(b)(2), or ask the county prosecutor to file a complaint seeking revocation of Mr. Hoffman's New Jersey firearms purchaser identification card. Four of the five options leave the guns in place. Experience has shown that in many instances victims of domestic violence are reluctant to come forward and seek the court's help. Seeking judicial approval prior to seizure of Mr. Hoffman's weapons would jealously guard Mr. Hoffman's right to his property while leaving Mrs. Hoffman in jeopardy. Temporarily detaining the weapons and then giving plaintiff an opportunity to be heard in court was the practical solution used by the police. This court recognizes that Mr. Hoffman's right to enjoy his property has been infringed. In this case the rights of Mr. and Mrs. Hoffman and the State all must be balanced. "The law is not aimed at ownership or property rights, but its purpose is gun registration and the protection of the public from the possession of guns by unfit persons." State v. Cunningham, supra, 186 N.J. Super. at 513, 453 A.2d 239.
Even though plaintiff did not use or threaten to use firearms unlawfully, the focus must be upon the individual and his potential for harming another. The temporary seizing of plaintiff's weapons is in accord with the long-standing policy of this State to keep guns out of the hands of all dangerously unfit persons, criminal as well as non-criminal. Burton v. Sills, 53 N.J. 86, 248 A.2d 521 (1968); State v. Sima, 142 N.J. Super. 187, 361 A.2d 58 (App.Div. 1976). This court holds that the *215 police came into lawful possession of plaintiff's weapons. The court now moves to the question of Mr. Hoffman's continued fitness to hold a firearms purchaser identification card.
The county prosecutor may apply to the court for revocation of the plaintiff's firearms purchaser identification card. N.J.S.A. 2C:58-3(f). The disqualifications are found in N.J.S.A. 2C:58-3(c). That statute states in pertinent part,
No ... firearms purchaser identification card shall be issued: (2) ... to any person who is presently an habitual drunkard; (3) any person who suffers from a physical defect or disease which would make it unsafe for him to handle firearms, ... or to any alcoholic unless any of the foregoing persons produces a certificate of a medical doctor or a psychiatrist licensed in New Jersey, or other satisfactory proof, that he is no longer suffering from that particular disability in such a manner that would interfere with or handicap him in the handling of firearms ... (5) to any person where the issuance would not be in the interest of the public health, safety or welfare.
This court has already found that plaintiff has exhibited a disturbing pattern of domestic violence and violence in general. Mr. Hoffman admitted to having an alcohol abuse problem. This court wishes him well in his battle with alcohol, but he will have to wage that battle unarmed.
The court finds that plaintiff no longer qualifies for a firearms purchaser identification card. Specifically, the continuation of plaintiff's card would not be in the interest of the public health, safety or welfare. N.J.S.A. 2C:58-3(c)(5). Plaintiff's habitual drinking disqualifies him under N.J.S.A. 2C:58-3(c)(2) and (3).
Plaintiff's card is hereby revoked and his complaint dismissed. The court further orders that plaintiff's guns and Japanese saber be sold and the proceeds turned over to him.
The Union County Prosecutor is to submit an appropriate order incorporating the court's ruling as above set forth under the five-day rule.