186 N.J. Super. 502 (1982)
453 A.2d 239
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
LESLIE H. CUNNINGHAM, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 1982.
Decided September 21, 1982.
*504 Before Judges BOTTER, ANTELL and FURMAN.
Carl Bergmann, Assistant County Prosecutor, argued the cause for appellant (Roger W. Breslin, Jr., Bergen County Prosecutor, attorney; Karen Regan Higgins, Assistant County Prosecutor, of counsel).
Kevin G. Roe argued the cause for defendant (Lucianna, Bierman & Stillman, attorneys; Kevin G. Roe, on the brief).
The opinion of the court was delivered by BOTTER, P.J.A.D.
The State appeals from an order requiring the Bergen County Prosecutor to return to defendant a .38-caliber handgun and a Winchester rifle which were seized by the police following a shooting for which defendant was arrested. On December 23, 1978 defendant shot his wife with the handgun in their home. Defendant was arrested and charged in a complaint with assault with an offensive weapon in violation of N.J.S.A. 2A:90-3. The charge was no-billed by the grand jury (we are told that defendant's wife would not testify), and the arrest records and related documents were thereafter ordered expunged on defendant's application pursuant to N.J.S.A. 2C:52-1 et seq. Thereafter defendant moved for the return of the handgun and rifle, and the prosecutor opposed the motion.[1] The principal issue in the case is whether returning the guns to defendant would violate the statutory provisions concerning the acquisition and transfer of firearms now contained in N.J.S.A. 2C:58-1 et seq.
Defendant's motion was first heard by the trial judge on January 16, 1981. At that time defendant produced a purchaser identification card issued on November 28, 1973 by the State of New Jersey and a permit to purchase a pistol issued by the State *505 on May 21, 1976. He also produced a receipt for the purchase of a.38-caliber handgun dated August 14, 1976. The State took the position that defendant's conduct demonstrated that he was disqualified under N.J.S.A. 2C:58-3(c)(5) from obtaining a permit for the acquisition of a firearm because "the issuance [of the permit] would not be in the interest of the public health, safety or welfare." The State contended that defendant was therefore disqualified from receiving back the handgun and rifle.
The trial judge adjourned the motion to give the State the opportunity to make a showing by affidavit setting forth "allegations as contained in that affidavit [that] appear on the surface to be sufficient to warrant the exercise of judgment to negate the permit." The trial judge said that if such a showing were made, "then we will have a hearing and the defendant will have an opportunity to cross-examine whatever witnesses the State may have." The judge added that if, "on the face of it," the affidavits do not demonstrate facts that justify negating the permit, defendant's motion would be granted.
The motion was considered again on March 13, 1981. Affidavits submitted by the State showed that two police officers went to defendant's home in Englewood in response to a report of a shooting. They observed defendant's wife lying unconscious on the kitchen floor, bleeding from the right shoulder from an apparent gunshot wound. Defendant was also in the kitchen. The affidavit of Officer Alston recited that defendant said he accidentally shot his wife. The affidavit of Sergeant Gaglione recited that defendant "appeared to be shaken and was speaking at a rapid pace," that defendant said "he did not mean to shoot his wife and that he did not understand how it had happened," and that defendant said, "Mrs. Cunningham had come at him and then the gun just went off." The gun used in the shooting was the .38-caliber revolver.
An affidavit of an assistant prosecutor was also produced. This recited that the following statements were contained in the State's file:

*506 a) One statement made by Ernest Graham, Jr., who is the brother of the victim in this matter. Mr. Graham states that he was a witness to the shooting in question and that he observed defendant state, `No woman puts me in the hospital.' He then observed defendant put his right hand in his coat pocket, pull out a gun, and shoot the victim.
b) One statement made by Patrolman Guitian who asserted that he helped transport the victim to the Englewood Hospital Emergency Room. He was advised that the bullet shot by defendant's gun stopped approximately 1/2 inch from the victim's heart.
c) One statement made by Patrolman Timpone who asserted that he arrived at the Cunningham house and observed Mrs. Cunningham on the kitchen floor. Officer Timpone further observed Mr. Cunningham standing in the kitchen, stating that he had shot his wife by accident. Mr. Cunningham then stated that the gun used in said shooting was in the kitchen cabinet. Officer Timpone removed the gun with a screwdriver and put it in a plastic bag.
d) One statement made by Patrolman Feinstein, who also arrived at the Cunningham house on December 23, 1978. He observed Mrs. Cunningham lying on the kitchen floor. He further observed Mr. Cunningham state that he had shot his wife with a gun but that it was not intentional.
The affidavit also recited that Ernest Graham, Jr., was currently residing in Rochester, New York, and the affiant was unable to reach him at that time.
Defendant argued that the assistant prosecutor's affidavit should not be considered because it contained hearsay and that mere proof of an accident would not justify disqualifying defendant from possessing a permit that would allow him to acquire the firearm. The trial judge noted that he did not have before him an application by the State to revoke a "firearms purchaser identification card" pursuant to N.J.S.A. 2C:58-3(f). (Such a permit is needed for a person to lawfully acquire a rifle or shotgun. N.J.S.A. 2C:58-3(b). It is distinct from a "permit to purchase a handgun" required by N.J.S.A. 2C:58-3(a).) In any case, the trial judge ruled that the State failed to make a showing that defendant was disqualified from obtaining a permit, holding that the phrase, "interests of public health, safety or welfare [in N.J.S.A. 2C:58-3(c)(5)] was [not] meant to encompass accidents." He stated further that the State would have had to make a showing of danger to the public "in the future because of some objective standard that I can evaluate, not the existence of one accident."
*507 The statements in the file which were quoted in the assistant prosecutor's affidavit can be considered in determining whether a facial showing had been made to justify a hearing at which testimony would be offered. Cf. State v. Ebron, 61 N.J. 207, 212 (1972) (hearsay may be considered as to probable cause for issuance of a search warrant). If Graham's statement is considered, the State made a showing of intentional wrongdoing by defendant, not a mere accident. Even without fully crediting Graham's version, defendant's statement to Sergeant Gaglione raises questions about how the shooting occurred and permits the inference that defendant handled the weapon negligently or recklessly. Cf. N.J.S.A. 2C:12-1(b)(4), n. 5, infra. Thus, the affidavits established sufficient cause for a hearing to determine whether defendant's conduct would disqualify him under N.J.S.A. 2C:58-3(c)(5) from obtaining a permit to acquire a handgun or rifle. Even if the shooting was accidental, the circumstances might warrant a finding of negligence in the use of a loaded gun that would support the denial of a permit. See Burton v. Sills, 53 N.J. 86 (1968), where the Supreme Court said of N.J.S.A. 2A:151-33[2] of the Gun Control Law, the predecessor of N.J.S.A. 2C:58-3(c)(5):
The statute provides that a pistol or revolver permit or a firearms purchaser identification card shall not be denied to any person of good character and good repute but that no such permit or identification card shall be issued to certain groups including minors under eighteen, convicted criminals, mental and physical defectives, narcotics addicts, habitual drunkards, etc. It also provides that no permit or identification card shall be issued `to any person where the issuance would not be in the interest of the public health, safety or welfare.' At oral argument the Attorney General took the position, with which we agree, that the quoted language was intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest. Cf. State v. Neumann, 103 N.J. Super. 83, 87 [246 A.2d 533] (Monmouth County Ct. 1968).

*508 In the light of this narrowed construction, the statutory standard is undoubtedly sufficient to withstand attack. See Ward v. Scott [11 N.J. 117], supra; Elizabeth Federal S. & L. Ass'n v. Howell [30 N.J. 190], supra; Moyant v. Paramus [30 N.J. 528], supra. The Legislature's goal was to keep guns out of the hands of unfit persons. To that end it disqualified certain classes which quickly come to mind. To guard against inadvertent omissions, it delegated authority to appropriately designated officials to disqualify any unfit individuals who, though not strictly within the enumerated classes, should not in the public interest be entrusted with firearms. [53 N.J. at 90-91]
Thus, sufficient evidence was presented to justify a hearing to determine whether defendant was disqualified from obtaining a permit to acquire a handgun or from retaining his firearms purchaser identification card.
This brings us to the second issue in the case, namely, whether a firearm that had been lawfully acquired by defendant and thereafter has been lawfully seized by the police must be returned to him at a time when he would be disqualified from obtaining a permit to acquire such a firearm. There is no express provision in N.J.S.A. 2C:58-1 et seq. on this point. N.J.S.A. 2C:58-3(f) provides for the revocation of a firearms purchaser identification card but not for the revocation of a permit to purchase a handgun.
The statutory scheme of these provisions, derived from the Gun Control Law, note 2, supra, is as follows. As stated above, it is necessary to obtain a "permit to purchase a handgun" in order to "receive, purchase or otherwise acquire" a handgun, subject to certain exceptions which need not be considered here. N.J.S.A. 2C:58-3(a). A firearms purchaser identification card is needed to acquire a rifle or shotgun. N.J.S.A. 2C:58-3(b). The handgun permit is valid for 90 days from the date of issuance and may be renewed by the issuing authority for an additional 90 days. N.J.S.A. 2C:58-3(f). Only one handgun can be purchased or acquired with each such permit. N.J.S.A. 2C:58-3(i). Thus, after a handgun permit is used it is exhausted and cannot be used again, nor is it valid beyond its prescribed life. In re Delaney, 144 N.J. Super. 483, 487 (App.Div. 1976). The short life of a handgun permit may account for the failure to include an *509 express provision for the revocation of such a permit, and we need not consider whether the power to revoke a permit before it expires is implied or may be exercised as an equitable power of the court for good cause shown.
N.J.S.A. 2C:58-3(f) provides that a firearms purchaser identification card "shall be valid until such time as the holder becomes subject to any of the disabilities set forth in subsection c of this section [N.J.S.A. 2C:58-3(c)], whereupon the card shall be void and shall be returned within 5 days by the holder...." N.J.S.A. 2C:58-3(f) further provides for the revocation of that identification card by a court, after a hearing, upon application of a county prosecutor, a chief police officer of a municipality, or any citizen. Until revoked, there is no limit to the number of rifles or shotguns a holder can lawfully purchase so long as he signs the certification required by N.J.S.A. 2C:58-3(b). N.J.S.A. 2C:58-3(i). The certification must indicate that the holder still possesses the qualifications for obtaining a permit or card contained in N.J.S.A. 2C:58-3(c). N.J.S.A. 2C:58-3(j) allows a person to inherit a firearm, but if the heir or legatee "does not qualify to possess or carry it," he can retain the firearm for a limited period of time only for the purpose of disposing of it.
N.J.S.A. 2C:39-7 makes it a crime for certain persons to purchase, own, possess or control any firearm. The categories include persons convicted of certain crimes and persons who were committed to a hospital or other institution for a mental disorder unless certified by a doctor as mentally qualified to handle a firearm. The categories of persons disqualified from obtaining a handgun permit or a firearms identification card are broader than the categories of persons listed in N.J.S.A. 2C:39-7. We note also the provisions of N.J.S.A. 2C:64-1 et seq. which authorize the forfeiture of property that is related to illegal activity, including firearms possessed or used for an illegal purpose. N.J.S.A. 2C:64-1(a)(1).[3] Firearms so used are designated *510 "prima facie contraband," id., which may be seized by a law enforcement officer. The State is required to retain prima facie contraband until criminal proceedings have been concluded by "entry of judgment or dismissal," and such contraband "shall be forfeited" to the entity funding the prosecuting agency, subject to the rights of owners and others. N.J.S.A. 2C:64-2. N.J.S.A. 2C:64-4(b) provides that the fact that a prosecution involving seized property terminates without a conviction "does not preclude forfeiture proceedings against the property...."
Thus, the Legislature has provided overlapping statutes to control the acquisition and possession of firearms. Whether or not defendant was indicted or convicted of a weapons offense, the State is required to retain a firearm which has been used unlawfully. Id. N.J.S.A. 2C:64-1(a)(1), N.J.S.A. 2C:64-2. Cf. N.J.S.A. 2C:64-3 which requires the State to institute a civil action to forfeit property that is not prima facie contraband within 90 days of the seizure. See R. 4:70-1(a).
The State contends that defendant shot his wife intentionally, but it has not argued that it may retain the handgun as contraband because it was used by defendant unlawfully.[4] The State's position in this case is that, whether intentional or accidental, the guns cannot be transferred back to defendant because he is disqualified from having a permit to purchase a handgun and the evidence shows that his firearms purchaser identification card automatically became void by conduct which established his disqualification under N.J.S.A. 2C:58-3(c)(5). A similar contention was rejected in State v. Completo, 146 N.J. Super. 548 (Law Div. 1977). There the court held that a shotgun could be returned to a defendant who possessed it lawfully until it was seized by the police when he was arrested for violating *511 the gambling laws. Thereafter, he was convicted of various gambling law violations but sought the return of the shotgun since it could not be forfeited under then existing statutes. The convictions disqualified defendant from having a firearms purchaser identification card. N.J.S.A. 2A:151-33. Nevertheless, the court held that returning the shotgun to defendant which he possessed lawfully when it was seized did not violate N.J.S.A. 2A:151-32(B) of the Gun Control Law. N.J.S.A. 2A:151-32(B) was similar to N.J.S.A. 2C:58-3(b), which provides that no one shall "sell, give, transfer, assign or otherwise dispose of nor receive, purchase or otherwise acquire a rifle or shotgun unless the purchaser, assignee, donee, receiver or holder ... possesses a valid firearms purchaser identification card ... and [certifies] ... that he presently complies with the requirements of subsection c" of N.J.S.A. 2C:58-3. However, the court held that the return of the shotgun was not a transfer within the meaning of the statute since defendant was its rightful owner and the State had no lawful basis for keeping it. Moreover, the court noted that had the State returned the gun promptly after defendant's arrest and before his conviction he would not have been disqualified from receiving it. Cf. In re Delaney, supra, where the court considered whether the State could forfeit handguns when it failed to prove that they had been used unlawfully.
We reach a different result in this case. We agree with the holding in Delaney, supra, that defendant had no viable permit to purchase a handgun which could be revoked, since it had been used to purchase the revolver and had expired long before the revolver was seized by the police. However, when the police lawfully take possession of a firearm, we conclude that a return of the firearm to its owner at a time when the owner would be disqualified from obtaining a permit to acquire the firearm constitutes a transfer that is prohibited by the statute. Clearly, the statutory design is to prevent firearms from coming into the hands of persons likely to pose a danger to the public. It seeks to achieve this result by providing for the revocation of a firearms purchaser identification card when its *512 possessor has become disqualified under N.J.S.A. 2C:58-3(c) subsequent to the issuance of the card. We note that forfeiture is another remedy that can be invoked, in an appropriate case. Forfeiture applies when a gun is possessed or used for a criminal purpose, whether or not its owner has been convicted. But we can imagine many circumstances when, without the owner using a gun unlawfully, the police would be authorized to seize a gun in order to protect the public from danger. This might be done as a parallel to the exercise of the common law right to abate a nuisance summarily when the safety of the public is threatened.[5] This could occur, for example, if an owner carelessly allowed his children to play with a loaded gun, or if an owner became insane and was carelessly handling a gun, resulting in a threat to the public safety. Such conduct would not be criminal but would justify the denial of a permit to acquire a gun. To further the legislative policy we conclude that the police need not return a gun to its owner in such a case, although the owner had not used *513 the gun unlawfully and no one had yet been injured. But the owner would have the right to a hearing to determine if he is disqualified on the standards of N.J.S.A. 2C:58-3(c) from receiving the gun. Thus, in the case at hand, if defendant is found to be disqualified the State need not return the guns but cannot keep them.[6] In that event, the guns will have to be sold and the proceeds given to the defendant or the guns can be transferred at defendant's request to someone who qualifies as a purchaser under N.J.S.A. 2C:58-1 et seq. and has an appropriate permit or card authorizing the acquisition. Cf. N.J.S.A. 2C:58-3(j).
The purpose of the Gun Control Law as described by our Supreme Court in Burton v. Sills, quoted above, is "to keep guns out of the hands of unfit persons." Registration is merely one means for accomplishing that goal. Cf. State v. Sima, 142 N.J. Super. 187, 192 (App.Div. 1976), aff'd on opinion below, 75 N.J. 82 (1977). The law is not aimed at ownership or property rights, but its purpose is gun registration and the protection of the public from the possession of guns by unfit persons. It expressly provides that no one shall "purchase" or "receive ... or otherwise acquire" a gun unless qualified under law. Although a person was once qualified to acquire a gun, we reject the view that the Legislature intended that a gun lawfully seized by the police should be returned to that person in the face of evidence that he was then legally unfit to possess it.
Accordingly, we reverse the judgment below and remand the case to the trial court for a hearing to determine if defendant is qualified to receive the return of the guns. If not, provision shall be made for their disposition in accordance with this opinion. We do not retain jurisdiction.[7]
*514 ANTELL, J.A.D. (dissenting).
The purchase permit and identification card authorized defendant to become the owner of these weapons. Once he acquired them the Act provides no means of removing them from his possession except under the forfeiture provision of N.J.S.A. 2C:64-1 et seq. on a showing that the guns were "unlawfully possessed, carried, acquired or used...." N.J.S.A. 2C:39-6e specifically provides that the prohibition upon "keeping or carrying" any firearm does not apply to a person's place of residence; hence, no permit is needed to keep a firearm in one's home. Eschewing the forfeiture provision for reasons which I do not understand, the police seek to accomplish their purpose simply by refusing to return the guns which they seized as evidence. If this procedure is to be sanctioned as an alternative to forfeiture, it should be done by the Legislature, not the courts.
Although nothing in the statute supports their action, the majority would require the lawful owner of a weapon to secure a new purchase permit to obtain the transfer back of his own handgun on the reasoning that it was lawfully taken from him *515 by the police. I do not know what more they would require for the return of the rifle since the identification card is still valid. The prohibition of N.J.S.A. 2C:58-3a upon the transfer of a handgun is inapplicable where the transferee has "first secured a permit to purchase a handgun" and that of N.J.S.A. 2C:58-3b upon the transfer of a rifle where the transferee "possesses a valid firearms purchaser identification card."
Although the State may apply for the revocation of defendant's identification card under N.J.S.A. 2C:58-3f, it has not done so, and the card which he still possesses is in all respects valid. The majority discounts the fact that before buying the handgun defendant "first secured a permit to purchase" by saying that the permit had become exhausted. This is not quite what we said in In re Delaney, 144 N.J. Super. 483, 487 (App.Div. 1976). There we held, apart from the fact that there is "no statutory procedure for the revocation of a purchase permit," that since the purchase permits "had served their purpose" they were no longer "in force and effect" and therefore there was nothing to revoke. The only purpose of a purchase permit, obviously, is to enable the holder to acquire a lawful property right in the weapon, and it is equally clear that one may not be deprived of his property except in a constitutional manner provided by law. The statute certainly does not oblige one to establish his eligibility to own the weapon more than once except, of course, where there has been an intervening relinquishment of ownership. Nor does it permit seizure of the purchased weapon where the owner no longer meets the statutory requirements for a purchase permit.
We left no doubt in Delaney on facts materially identical to these that handguns acquired in accordance with prescribed statutory procedures and confiscated by the police cannot be withheld from their lawful owner except by recourse to the forfeiture provisions of the Weapons Act, N.J.S.A. 2A:151-16. Having lawfully become the owner of the handgun defendant is, in my view, entitled to the return of his property without a new *516 purchase permit. As to the rifle, his position is even stronger. His identification card is still intact. Even if it were not, his status as owner entitles him to its return.
Aside from the fact that the procedure invented by the majority is one which has no support in the statute, its standards are so vague as to be unworkable. Although the majority attempts to limit their holding to cases where the guns are being held by the police, the statute says that "No person" may transfer a weapon to one not the holder of a purchase permit or an identification card. The logic of their construction would require an owner to apply for a new permit in order to receive back his weapon whenever possession thereof is taken by any other person, such as lawful borrowers and repair shops, not just the police. Even if we could limit the majority's remedy to cases, as the majority says, "when the police lawfully take possession of a firearm," this would still place on the owner the burden of seeking a new permit in the myriad of cases where there is no reason to do so, such as where the police recover the weapon from a thief or where it is taken from the owner for examination or to be held as evidence. Finally, I discern no criteria for determining when a police seizure of a weapon from its legal owner is "lawful" in the sense which would require the owner to obtain a new permit in order to recover his property.
By providing under N.J.S.A. 2C:64-1 et seq. for the forfeiture of "firearms which are unlawfully possessed, carried, acquired or used," designating these "prima facie contraband" and the procedure to be followed in connection therewith, the Legislature indicated the only circumstances under which the State may accomplish what it seeks to do in this case and furnished the means to do so. That these procedures may not be available in this case, or that the State chooses not to avail itself thereof, does not, regardless of our laudable purpose, justify us in embarking on a course of undisguised legislation. I would therefore affirm the judgment below.
NOTES
[1] The transcript indicates that, notwithstanding the expungement order, for the purpose of these proceedings defendant consented to the prosecutor's use of his records pertaining to the incident for which defendant was arrested.
[2] N.J.S.A. 2A:151-33(d) of the Gun Control Law, L. 1966, c. 60, is identical to N.J.S.A. 2C:58-3(c)(5). We note also that N.J.S.A. 2C:12-1(a)(2) makes it a disorderly persons offense of simple assault to negligently cause bodily injury to another with a deadly weapon.
[3] N.J.S.A. 2C:64-1 replaced N.J.S.A. 2A:151-16.
[4] The Code provisions for forfeiture were not in effect at the time the guns were seized. Cf. N.J.S.A. 2A:151-16; Sawran v. Lennon, 19 N.J. 606, 614 (1955) (holding that N.J.S.A. 2A:151-16 authorized forfeiture of firearms for unlawful activity that constituted crimes, not lesser offenses); see In re Delaney, supra.
[5] As noted above, firearms which are unlawfully possessed, acquired or used are designated prima facie contraband subject to forfeiture. N.J.S.A. 2C:64-1(a). The predecessor statute, N.J.S.A. 2A:151-16, declared such firearms to be a "nuisance." See N.J.S.A. 2C:12-1(b)(4) which defines aggravated assault to include knowingly pointing a firearm at or in the direction of another person, whether or not the actor believes it to be loaded, in circumstances manifesting extreme indifference to the value of human life.

The dangers associated with firearms are such that the negligent or reckless use of firearms could constitute a public nuisance. The right to abate a public nuisance summarily without judicial process was a common law right that existed long before the adoption of the Federal Constitution. Lawton v. Steele, 152 U.S. 133, 142, 14 S.Ct. 499, 503, 38 L.Ed. 385, 390 (1894). The police power includes "everything essential to the public safety, health and morals, and [justifies] the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance." Id., 152 U.S. at 136, 14 S.Ct. at 500, 38 L.Ed. at 388. See, also, Ajamian v. North Bergen Tp., 103 N.J. Super. 61, 72-75 (Law Div. 1968), aff'd on opinion below, 107 N.J. Super. 175 (App.Div. 1969), cert. den. 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970), upholding the right summarily to order residents to vacate a building deemed a hazard to health and safety without a judicial proceedings, under the common law right to abate a nuisance summarily. Cf. Paterson v. Fargo Realty, Inc., 174 N.J. Super. 178, 183 (Cty.Ct. 1980) (demolition of a fire damaged building).
[6] We do not pass on the State's right to forfeit the handgun because of its alleged unlawful use since it did not assert that right. See note 4, supra.
[7] In order to reach the merits of this controversy we have overlooked procedural questions that might be raised. The application for the return of the guns was made by motion approximately two years after the grand jury returned a no bill against defendant and the charge against him, originally made by complaint in the Englewood Municipal Court, was dismissed. The prosecutor filed no responsive pleading other than the affidavits mentioned above but took the position that the circumstances showed defendant was subject to the statutory disability created by the criteria contained in N.J.S.A. 2C:58-3(c)(5), making his firearms purchaser identification card "void" according to N.J.S.A. 2C:58-3(f). Where the holder of such a card does not surrender the card voluntarily, the prosecutor may apply to the Superior Court for its revocation. Id. The prosecutor's defense to defendant's application in effect sought the revocation of defendant's card in this action. As noted above, no action had to be taken against the handgun purchaser permit since it had become exhausted by its use long ago. Thus, as indicated above, the hearing on the remand is to determine if defendant should be disqualified from obtaining a handgun purchase permit or from retaining his firearms purchaser identification card. It would have been better practice for the prosecutor to have filed a cross-motion seeking the return of defendant's firearms purchaser identification card specifically asserting the grounds on which the prosecutor intended to rely.