**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4380-17T2

IN THE MATTER OF THE
APPEAL OF THE DENIAL
OF F.E.'S APPLICATION FOR
A FIREARMS PURCHASER
IDENTIFICATION CARD.

Submitted October 10, 2019 – Decided November 13, 2019

Before Judges Koblitz and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County.

Evan F. Nappen, attorney for appellant F.E. (Louis P. Nappen, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent State of New Jersey (Tom Dominic Osadnik, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

F.E.[1] appeals from the trial court's April 24, 2018 order, issued after a plenary hearing, which affirmed the police chief's denial of a firearms purchaser identification card (FPIC) and two handgun purchase permits (HPP). F.E. wanted to purchase both long-guns and pistols. Both F.E. and Lieutenant Keith Sanzari, the officer who conducted the background investigation, testified at the hearing, after which the trial court made detailed findings. We affirm.

F.E. served as a Navy Corpsman Platoon Medic from 1996 to 2000 before his honorable discharge. As an infantry medic, F.E. was required to carry a Baretta 92F handgun and "be proficient in all weapon systems that [his] Marines would have to use."

F.E. has been employed by Hackensack University Medical Center as a critical care paramedic on the Specialty Care Transport Unit for more than ten years. In 2016, F.E. applied to become a police officer with the Oakland Police Department. Though he was not hired, he still wants to become a police officer. F.E. believed he was not hired because he was forty-two years old. While his employment application was pending, F.E. met with a detective who suggested he have his criminal record expunged.

---

[1] We use initials as requested by applicant without opposition. See N.J.A.C. 13:54-1.15.

A-4380-17T2

F.E. had two prior criminal incidents. When he was eighteen years old, F.E. was arrested after he stole a purse and wrote a check to himself for approximately $100. He was working as a lifeguard and smoking marijuana with his friends. F.E. pled guilty to disorderly person's offenses.

In October 2001, when he was twenty-four years old, F.E. was arrested following a high-speed police pursuit. When F.E. was pulled over, he had a knife in his hands. F.E. did not comply with repeated demands to drop the knife. He admitted to being drunk and had a blood alcohol concentration (BAC) of .07 percent. He pled guilty to third-degree eluding the police, N.J.S.A. 2C:29-2(b). His petition to expunge his criminal history was granted in the spring of 2016, shortly before he applied for the gun permits.

With the consent of the State, F.E. submitted the report of an expert psychologist who was not available to testify. The expert stated in the report: "For the last [sixteen years], [F.E.] has led a law abiding, stable lifestyle. I see no indications that [F.E.] has an antisocial personality, a propensity for violent, aggressive, threatening, or suicidal behavior, substance abuse problems, interpersonal problems, or psychological problems." The expert concluded that F.E. "poses a very low risk to the community and himself with a firearm. There

3

are no indicators present that raise concern about him owning and safely using firearms."

F.E. raises three issues on appeal. He maintains the court erred by focusing on his past conduct rather than his present fitness to own a firearm. He also argues the chief of police and investigating officer erred by using his expunged criminal record as a basis to deny his FPIC and HPP application. Finally, F.E. argues for the first time on appeal that the public health, safety and welfare gun permit disqualifier is unconstitutionally vague and violates due process.

I. Legal analysis.

We defer to a trial court's factual findings when they are "supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Investors Ins. Co. of America, 65 N.J. 474, 484 (1974). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). This is because the trial court has the opportunity to see and observe witnesses, and hear them testify. Ibid. Only when "they are so wholly insupportable as to result in a denial of justice," should we disturb the factual findings of a trial court. Rova Farms, 65 N.J. at

4

483–84 (quoting Greenfield v. Dusseault, 60 N.J. Super. 436, 444 (App. Div. 1960)). We review a trial court's legal or statutory interpretation de novo. State v. Grate, 220 N.J. 317, 329 (2015).

In order to purchase a handgun or firearm[2] in New Jersey, a person must first acquire an HPP or FPIC. N.J.S.A. 2C:58-3(a)(1) and (b)(1). A "person of good character and good repute in the community in which he [or she] lives, and who is not subject to any of the [enumerated] disabilities set forth [in the law]," may obtain these permits. N.J.S.A. 2C:58-3(c). "[W]here the issuance would not be in the interest of the public health, safety or welfare," however, a person is not eligible to secure an HPP or FPIC. N.J.S.A. 2C:58-3(c)(5).

## II. The expunged record.

When F.E. applied for the gun permits in Oakland, he did not report his criminal history because his record had been expunged. The Oakland Police Chief informed him his application was denied because the details of a 2001 arrest disqualified him from obtaining either an HPP or an FPIC. F.E. appealed to the trial court.

---

[2] A "firearm" is defined as "an antique cannon or a rifle or shotgun, other than an antique rifle or shotgun." N.J.S.A. 2C:58-3(b)(1).

5

The court granted the State's motion to unseal the expunged records "for the limited purpose of discussing it during the appeal of the denial" of the permit application. The prosecutor also said "the lieutenant who was doing the background investigation had independent knowledge of [F.E.'s] prior criminal arrest and conviction."

F.E.'s counsel acknowledged that a police officer may have "institutional memory" concerning a person's expunged record and "can consider their own memory . . . of those events in deciding whether or not they want to decide whether or not this is going to be a public health, safety or welfare kind of denial."

### III. The court's findings.

The court considered the testimony of F.E. and Sanzari, as well as the following exhibits: the firearms evaluation, the psychologist's curriculum vitae, the FPIC and HPP application, the Automated Complaint System (ACS) printout, the police report, and the chief's denial letter.

The court credited F.E.'s testimony concerning his work history, military service, and volunteer work. But after reviewing F.E.'s testimony and the underlying facts of his 2001 conviction, the court was concerned that F.E. minimized his behavior despite having pled guilty to eluding the police. The

6

court also noted that F.E. "[d]enied that he had the knife in his hand at the time." While F.E.'s BAC was below the .08 percent statutory threshold for a DWI, the court was concerned that he chose to drink and then drive "at a high rate of speed, and pled and admitted — and it's not the fact of the conviction again, but admitted that he had eluded police." The court stated that when F.E. pled guilty to eluding the police, as elements of the crime he admitted that he was aware that law enforcement was trying to stop him and he disregarded the signal to stop.

The court also considered F.E.'s 1994 conviction, noting that "again, it's not the fact of the conviction, but he was arrested and charged and admitted theft and forgery . . . [h]e's an adult at this time." The court stated:

> So we have theft, forgery, marijuana use involved, and we have eluding, some . . . evidence that there may have been a . . . violent struggle between law enforcement and [F.E.] as they extricated him from his vehicle, . . . and evidence that he may have been in possession of a knife at the time, and alcohol involved. All right. So we have two separate incidents of criminal behavior, a disregard for the rules of society where the use of alcohol or drugs is involved.

The court recalled that the police report, admitted into evidence without objection, detailed statements made by F.E. during his arrest: "I was drinking and I was stupid. I have a lot of pent up aggression."

A-4380-17T2

The court considered Sanzari's testimony and determined it was "very credible," pointing to Sanzari's years of experience and concluding that he "conducted his investigation and exercised his due diligence." Having previously been aware that F.E. was denied employment with the Oakland Police Department and "coming across this indication that there was a complaint" in ACS, Sanzari properly investigated F.E.'s criminal history.

The court expressed its concern that F.E.'s psychologist minimized F.E.'s criminal history throughout the report. In particular, the court found it "extremely troubling and concerning" that F.E. reported to the psychologist that he was trained in the military to "work while inebriated," so "while he may have been legally drunk at the time" of the eluding incident, "he felt quite functional."

The court was troubled by the psychologist's assessment that F.E. has a nonviolent history given "some evidence" in the police report that there was a "violent confrontation" between F.E. and the police when the police were removing him from his car during the 2001 arrest. The court also found it "striking" that the psychologist's report indicated F.E. had no history of substance abuse in light of his first arrest involving marijuana and his second arrest involving alcohol.

8

The court expressed concern about F.E.'s reasons, expressed to the psychologist and in court, for wanting a firearm, stating that F.E. "offered that . . . if he is allowed to purchase a gun, it will validate to himself that he has become a better person." The court stated: "[W]hen I consider [F.E.'s] own testimony that I find to minimize these past incidents, when I consider [F.E.'s] reasons for wanting a firearm, how he feels it would validate him as a changed, mature person, that raises very serious questions and concerns with this [c]ourt."

The court pointed out that, while it must review the denial of F.E.'s application de novo, it also defers to the chief's "investigative experience and to any expertise he or [she] appears to have developed in administering [N.J.S.A. 2C:58-3(c)(5)]," which disqualifies an individual from firearm ownership if it is "not be in the interest of the public's health, safety or welfare." In assessing whether a disqualification was appropriate, the court concluded that the chief and the court could consider "the facts and circumstances underlying criminal charges that were dismissed" when "deciding whether a person is entitled to purchase a firearm." Quoting Ulinsky v. Avignone, 148 N.J. Super. 250, 255 (App. Div. 1977), the court found that "while the records of an expunged arrest may be said to be nonexistent in the eyes of the law, '[t]he events which they concern and evidence do[,] nonetheless[,] have existence.'"

A-4380-17T2

The court determined that the State proved "by more than a preponderance of the evidence" that F.E.'s ownership of a firearm posed a risk to the public health, safety and welfare.

IV. Use of past conduct.

F.E. argues that the court improperly denied his FPIC and HPP application by considering his past conduct instead of his present qualification to possess firearms. We have determined that "the statutory design [of N.J.S.A. 2C:58-3(c)] is to prevent firearms from coming into the hands of persons likely to pose a danger to the public." State v. Cunningham, 186 N.J. Super. 502, 511 (App. Div. 1982). Our Supreme Court has determined that the public health, safety and welfare disqualifier is "intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest." In re F.M., 225 N.J. at 507 (quoting In re Osworth, 365 N.J. Super 72, 79 (App. Div. 2003)). In Cunningham, we examined the meaning of "public health, safety or welfare" in N.J.S.A. 2C:58-3(c)(5) and determined that a previous instance of an intentional wrongdoing, or handling a weapon negligently or recklessly, could be sufficient grounds to deny a permit application. 186 N.J. Super. at 507; see also In re Sbitani, 216 N.J. Super. 75,

10

78 (App. Div. 1987) (finding that the Legislature "expressly anticipated that a disorderly persons offense may be a bar to issuance of a purchaser identification card" because "N.J.S.A. 2C:58-3(e) provides that an application for a card shall 'set forth . . . whether [the applicant] has ever been convicted of a . . . disorderly persons offense . . . .'") (alteration in original).

The court's fact-sensitive analysis is entitled to our deference. In re J.W.D., 149 N.J. at 116 ("Ordinarily, an appellate court should accept a trial court's findings of fact that are supported by substantial credible evidence."). Deference is "especially appropriate" here because the court's factual findings were based largely on F.E.'s own testimony. Id. at 117. The court's decision is supported by substantial credible evidence.

## V. Alleged police violations.

F.E. argues that the chief and Sanzari improperly considered his expunged records when considering his FPIC and HPP application. The expungement statute provides:

> Inspection of the files and records, or release of the information contained therein, which are the subject of an order of expungement, or sealing under prior law, may be permitted by the Superior Court upon motion for good cause shown and compelling need based on specific facts. The motion or any order granted pursuant thereto shall specify the person or persons to whom the records and information are to be shown and

11

the purpose for which they are to be utilized.  <u>Leave to inspect shall be granted by the court only in those instances where the subject matter of the records of arrest or conviction is the object of litigation or judicial proceedings</u>. . . .

[N.J.S.A. 2C:52-19 (emphasis added).]

The statute setting forth the effect of expungement states:

<u>Unless otherwise provided by law</u>, if an order of expungement is granted, the arrest, conviction and any proceedings related thereto shall be deemed not to have occurred, and the petitioner may answer any questions relating to their occurrence accordingly, except as follows:

. . . .

Information divulged on expunged records shall be revealed by a petitioner seeking employment within the judicial branch <u>or with a law enforcement or corrections agency</u> and such information shall continue to provide a disability as otherwise provided by law.

[N.J.S.A. 2C:52-27(c) (emphasis added).]

"The dismissal of criminal charges does not prevent a court from considering the underlying facts in deciding whether a person is entitled to purchase a firearm or recover one previously taken by the police."  <u>In re Osworth</u>, 365 N.J. Super. at 78 (concluding that "dismissal of the charges following successful participation in a pretrial intervention program" may be considered); <u>see</u> <u>also</u> <u>In re J.W.D.</u>, 149 N.J. at 110 (finding that the applicant

12

"pose[d] a threat to public health, safety, or welfare . . . notwithstanding [a] prior dismissal of [a] domestic violence complaint"); State v. Freysinger, 311 N.J. Super. 509, 514–17 (App. Div. 1998) (finding a legislative intent that confiscated firearms not be returned to defendants after the dismissal of a domestic violence complaint if they are a threat to the public health, safety or welfare). If a dismissal does not prevent the consideration of the underlying facts, then certainly a finding of guilt followed by expungement does not prevent such consideration.

The "subject matter" of F.E.'s prior arrest and conviction was clearly relevant to the denial of his FPIC and HPP application. F.E.'s decision to drink and drive, the cavalier nature with which he discussed being able to work while intoxicated, his apparent violent encounter with the police, and the seeming unwillingness to acknowledge his conduct during the 2001 arrest all bear on his fitness to own a firearm.

Moreover, Sanzari first learned of F.E.'s criminal record when F.E. applied for employment with the Oakland Police Department. F.E. did not object to Sanzari's testimony. After seeing an eluding arrest in ACS, it was within Sanzari's duties, as the officer evaluating whether F.E. should own a firearm, to look into the nature and circumstances of that incident further.

A-4380-17T2

VI. Constitutional arguments.

The United States Constitution guarantees individuals the right to keep and bear arms. U.S. Const. amend. II. Our Supreme Court has determined that under "the law governing forfeiture of weapons and identification cards, the right to bear arms under the Second Amendment to the United States Constitution is subject to reasonable limitations." In re Forfeiture of Pers. Weapons and Firearms Identification Card belonging to F.M., 225 N.J. 487, 506 (2016). Such limitations can include having a predicate conviction that bars firearm ownership, see N.J.S.A. 2C:39-7, or a specifically enumerated disqualification under N.J.S.A. 2C:58-3.

F.E. argues that the public health, safety or welfare disqualification is unconstitutionally vague, does not pass a rational basis analysis, and violates Due Process. As the State points out, F.E. did not raise this constitutional argument in the trial court, other than to mention that he had a "right guaranteed by the Second Amendment" to a gun. Therefore, under Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973), we do not consider this argument. We note, however, that we have previously determined that N.J.S.A. 2C:58-3(c)(5) is not unconstitutional. In re Winston, 438 N.J. Super. 1, 10 (App. Div. 2014). F.E.'s

14

remaining arguments are without sufficient merit to require further discussion.

R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION