**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0076-24

IN THE MATTER OF
COMPELLING THE SALE OF
MAYA KUN'S FIREARM.

_____

Submitted March 11, 2026 – Decided March 31, 2026

Before Judges Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. GPR-0068-23.

Evan F. Nappen Attorney at Law, PC, attorneys for appellant Maya Kun (Louis P. Nappen, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent State of New Jersey (Ian C. Kennedy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Petitioner Maya Kun appeals from an order compelling the sale of her handgun and prospectively barring her from being issued a handgun purchase permit (HPP) or a firearm purchaser identification card (FPIC). The police were called to Kun's home on April 12, 2023, because her boyfriend, D.G., was

experiencing a mental health crisis. Kun voluntarily surrendered her firearm (for which she was licensed in New York) on the day of the incident.

The State subsequently filed a motion to compel the sale of Kun's firearm. Following a hearing, the court granted the State's motion and ordered Kun was "prohibited from owning, purchasing, possessing, or receiving firearms and/or ammunition, and from securing or holding a[n] [FPIC] or [HPP] pursuant to N.J.S.A. 2C:58-3, or a permit to carry a handgun pursuant to N.J.S.A. 2C:58-4." After a careful review of the record and applicable law, we conclude the trial court erred in compelling the sale of Kun's firearm, and reverse and remand for an order consistent with this opinion.

I.

We gather the following facts from the trial court's hearing, where Kun and Closter Police Department (CPD) officers Anthony Lofaro and Jorge Vela testified. Kun is a Doctor of Osteopathic Medicine who specializes in child psychology. On April 12, 2023, CPD responded to Kun's home after being informed by a third party that Kun's live-in boyfriend, D.G., "had made concerning statements about wanting to harm himself." Upon arrival, Kun told Lofaro that D.G. had been drinking heavily since April 6 and planned to kill himself because of his anguish over the anniversary of his mother's death. The

A-0076-24

first officer testified D.G. smelled of alcohol, was "mildly aggressive," and had a bruise above his right eye, apparently caused by falling while intoxicated. The responding officers eventually decided to transport D.G. to the hospital for evaluation. Kun testified D.G. was evaluated and sent home the same day.[1]

Kun voluntarily surrendered her firearm to police on the date of the incident. The firearm, a Glock G19, was stored in a safe in the primary bedroom, accessible only with a code and key. The firearm was removed after D.G. was placed in the ambulance and sent to the hospital. Kun had a New York Firearms ID Card for the Glock, but she did not have a New Jersey FPIC or HPP.

Kun testified that she and D.G. lived together for three years with her three children from another relationship. She was the only person with access to the gun safe. In response to questioning, by the trial court, Kun stated she would have given D.G. access because she had no concerns about his mental health. However, later on in the hearing, Kun corrected this earlier statement and said she would not give D.G. access. At the hearing, Kun also produced a July 2024 letter from D.G.'s psychoanalyst, which stated:

> I have been seeing [D.G.] for symptoms related to his mother's passing since 2022. During this time, I have not had any concerns related to suicidality or homicidal[ity] on his part. This includes during the

---

[1] The trial court mistakenly found D.G. was involuntarily committed.

 A-0076-24

> episode in question, which took place in April 2023, around the anniversary of his mother's death. [D.G.] has no history of violence, has not had a drink in a year, despite losing his father two months ago. He also attends Alcoholics Anonymous meetings every week and achieved his 90 meetings in 90 days benchmark.
>
> It is my professional opinion that he does not pose any danger to society or himself.

The trial court found both officers credible and concluded D.G. was disqualified from having an HPP or FPIC because he was (1) "likely to engage in conduct, other than justified self-defense, that would pose a danger to self or others," N.J.S.A. 2C:58-3(c); (2) "suffer[ing] from a physical defect or disease which would make it unsafe for that person to handle firearms, [or] . . . substance use disorder," N.J.S.A. 2C:58-3(c)(3); (3) had been involuntarily committed, N.J.S.A. 2C:58-3(c)(13); and (4) would pose a threat to the health, safety, or welfare of the public if issued a firearm, N.J.S.A. 2C:58-3(c)(5). The court considered the letter from D.G.'s psychoanalyst a "net opinion" and insufficient to prove D.G. "no longer has that particular disability in a manner that would interfere with or handicap that person in the handling of firearms." N.J.S.A. 2C:58-3(c)(3).

The court also found Kun was not fit to own a gun as she was a threat to the health, safety, or welfare of the public if issued a firearm, N.J.S.A. 2C:58-

4

3(c)(5). In making its decision, the court considered only Kun's statement that she was willing to give D.G. access to the gun safe despite his mental health and did not credit her later testimony correcting this earlier statement. In sum, the court held:

> [I]n my view, given the totality of the evidence here, it is common sense given the fact that you would give access to a person who clearly has been very troubled. Who's expressed suicidal ideation, has had an issue with alcoholism and continues to treat with a psychologist for the past year, that cohabitates with you. Given the totality of the evidence here, and your initial answer to me that you wouldn't hesitate to give him access to your firearms, I do find that the State has met its burden by a preponderance of the evidence and you're disqualified pursuant to [N.J.S.A.] 2C:58-3[(c)(5)].

II.

We review "a trial court's legal conclusions regarding firearms licenses de novo." In re N.J. Firearms Purchaser Identification Card by Z.K., 440 N.J. Super. 394, 397 (App. Div. 2015). We "accept a trial court's findings of fact that are supported by substantial credible evidence," particularly when the evidence is testimonial and involves credibility determinations. In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997). A "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531,

A-0076-24

552 (2019) (quoting <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)).

We begin our analysis by acknowledging the relevant legal principles. N.J.S.A. 2C:58-3 governs the purchase of firearms in the State of New Jersey and requires a person to obtain an FPIC or HPP in order to purchase a gun. Here, Kun voluntarily surrendered her stored firearm to police, which she had purchased legally in another state.

In <u>J.W.D.</u>, the defendant's FPIC and firearms were seized after his wife filed a domestic violence complaint and received a temporary restraining order (TRO) against him. 149 N.J. at 111. After the TRO was dismissed, the defendant wrote a letter to the Hunterdon County Prosecutor's Office requesting his FPIC and firearms be returned. <u>Ibid.</u> The Hunterdon County Prosecutor's Office returned J.W.D.'s FPIC and firearms. <u>Ibid.</u>

J.W.D.'s wife filed a second domestic violence complaint against him and obtained a TRO that required confiscation of his FPIC and firearms. <u>Ibid.</u> J.W.D. filed a cross-complaint against his wife. <u>Ibid.</u> Following a trial, the Family Part dismissed the complaints and dissolved the TROs. <u>Id.</u> at 112. J.W.D. sent a second letter to the Hunterdon County Prosecutor's Office requesting the return of his firearms. <u>Ibid.</u> The State opposed, and after a

A-0076-24

hearing, the trial court ultimately found a "volatile situation" and continued possession of an FPIC and firearms by the defendant "would not be in the interest of public health, safety, or welfare." Id. at 113.

Our Supreme Court concluded the Legislature intended that "a court should not return weapons to a defendant who is a threat to the public health, safety, or welfare." Id. at 116; see also State v. W.C., 468 N.J. Super. 324, 334 (2021) (confirming J.W.D.'s conclusion that "the State is entitled to forfeiture of weapons . . . 'if the court finds that the defendant' is disqualified from holding a[n] [FPIC] . . . under N.J.S.A. 2C:58-3(c)(5) because he or she 'poses a threat to the public health, safety, or welfare'" (quoting J.W.D., 149 N.J. at 116)). The J.W.D. Court emphasized, "The contrary result—the return of weapons to a defendant who is a threat to the public—would be an invitation to a tragedy. We doubt the Legislature would have intended so disastrous a result." J.W.D., 149 N.J. at 116.

In State v. Cunningham, 186 N.J. Super. 502 (App. Div. 1982), prior to the Supreme Court's decision in J.W.D., we similarly determined that when a firearm is lawfully taken, "a return of the firearm to its owner at a time when the owner would be disqualified from obtaining a permit to acquire the firearm constitutes a transfer that is prohibited by the statute." Id. at 511. We stressed

the clear intention of "the statutory design is to prevent firearms from coming into the hands of persons likely to pose a danger to the public." Ibid. This result is achieved "by providing for the revocation of an [FPIC] when its possession has become disqualified under N.J.S.A. 2C:58-3(c) subsequent to the issuance of the card." Id. at 511-12.

N.J.S.A. 2C:58-3 governs the issuance of HPPs and FPICs. A person may not receive either an HPP or an FPIC if they are (1) "known in the community in which the person lives as someone who has engaged in acts or made statements suggesting the person is likely to engage in conduct, other than justified self-defense, that would pose a danger to self or others," N.J.S.A. 2C:58-3(c), or (2) subject to any of the disqualifiers listed in N.J.S.A. 2C:58-3(c)(1) to (15). Relevant to this case are the disqualifiers barring the issuance of a permit to

> any person who suffers from a physical defect or disease which would make it unsafe for that person to handle firearms, to any person with a substance use disorder unless any of the foregoing persons produces a certificate of a medical doctor, treatment provider, or psychiatrist licensed in New Jersey, or other satisfactory proof, that the person no longer has that particular disability in a manner that would interfere with or handicap that person in the handling of firearms
> . . . .
>  . . . .

8

. . . any person where the issuance would not be in the interest of the public health, safety or welfare because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm[.]

. . . .

. . . [or] any person who has previously been voluntarily admitted to inpatient treatment . . . or involuntarily committed to inpatient or outpatient treatment . . . unless the court has expunged the person's record . . . .

[N.J.S.A. 2C:58-3(c)(3), (5), (13).]

The statute does not require that an applicant provide information regarding other members of the applicant's household, although there are requirements regarding the safekeeping of a firearm from minors. See N.J.S.A. 2C:58-15(a)(1) to (3). N.J.S.A. 2C:58-3(f) allows the State to file a motion to revoke an FPIC if the holder becomes subject to any of the disqualifiers listed in N.J.S.A. 2C:58-3(c). The State has the burden of proving the owner is disqualified by a preponderance of the evidence. See In re R.W.T., 477 N.J. Super. 443, 461 (App. Div. 2023).

With this statutory and regulatory backdrop in mind, we turn to petitioner's contentions. Kun argues N.J.S.A. 2C:58-3(f) does not authorize the State to seize nor compel the sale of firearms that are then in the owner's possession, citing In re M.U.'s Application for a Handgun Purchase Permit, 475

N.J. Super. 148, 199 (App. Div. 2023) (noting N.J.S.A. 2C:58-3(f) does not authorize "the forfeiture of firearms already possessed"). We disagree and conclude M.U. is distinguishable because the firearm in that case remained in the owner's possession. Id. at 164-68. Here, Kun voluntarily surrendered the firearm, and the State maintained possession throughout the proceedings. Under those circumstances, the State cannot not return a firearm if the owner would otherwise be disqualified under N.J.S.A. 2C:58-3. See Cunningham, 186 N.J. Super. at 511 ("[W]hen the police lawfully take possession of a firearm, we conclude that a return of the firearm to its owner at a time when the owner would be disqualified from obtaining a permit to acquire the firearm constitutes a transfer that is prohibited."). The rationale of Cunningham is that it would be illogical for the State to return a firearm to a person the State would not grant a purchase permit to in the first place. See id. at 511-12. When this is the case, the State must seek permission to sell the firearm and give the proceeds to the owner. See id. at 513.

However, the trial court erred in disqualifying Kun based on D.G.'s alleged mental-health struggles. All of the disqualifiers in N.J.S.A. 2C:58-3(c) address the conduct of the firearm owner, not that of an adult third party who lives with the owner. Despite this clear language, the court's opinion was

10

overwhelmingly focused on D.G.'s conduct and risk propensity. The trial court found D.G. was disqualified from having an HPP or FPIC pursuant to several disqualifiers: N.J.S.A. 2C:58-3(c) (reputation in community for conduct that threatens self or others); N.J.S.A. 2C:58-3(c)(3) (mental illness); N.J.S.A. 2C:58-3(c)(13) (prior involuntary commitment); and N.J.S.A. 2C:58-3(c)(5) (character or temperament posing threat to public health, safety, or welfare). The court considered the letter from D.G.'s psychoanalyst as a "net opinion," and insufficient to prove that D.G. "no longer has that particular disability in a manner that would interfere with or handicap that person in the handling of firearms." N.J.S.A. 2C:58-3(c)(3). But D.G. was not the owner of the gun, the weapon had not been seized from him, there was no domestic violence order in place, and he was not seeking an HPP or FPIC.

The court had no reason to make findings regarding D.G. The State did not present evidence or prove issuance of a firearm to D.G. would be a threat to health, safety, or welfare because it was not seeking to disqualify D.G. from possessing either an HPP or an FPIC. The incident in question happened on April 12, 2023. The trial court decided the motion over a year later, on August 5, 2024. The State presented the two officers who responded to the scene that day, but they did not proffer any evidence of D.G.'s present condition. D.G.

11

himself did not testify, and there was no testimony from any health care professional stating D.G. was a danger to himself or others. The State had the burden of proving by a preponderance of the evidence that Kun, not D.G., was disqualified pursuant to N.J.S.A. 2C:58-3. See R.W.T., 477 N.J. Super. at 461.

Despite this, the court mistakenly concluded D.G. was mentally ill and suffering from a substance-use disorder and therefore disqualified him pursuant to N.J.S.A. 2C:58-3(c)(3), despite the lack of any credible evidence of D.G.'s mental illness or substance abuse. No testimony was presented from treating physicians or anyone who has diagnosed D.G. with a mental illness. Moreover, no expert testimony was presented to prove D.G. was suffering from a "substance use disorder." Ibid. The court also concluded D.G. was disqualified pursuant to N.J.S.A. 2C:58-3(c)(13) because he had been involuntarily committed. But the State did not present any evidence D.G. had been involuntarily committed. One of the officers testified D.G. was taken to be screened, but D.G. was taken home after the evaluation. Additionally, the State did not prove D.G. was "known in the community in which" he lived, N.J.S.A. 2C:58-3(c), as someone who was a danger to himself or others. No witnesses testified about D.G.'s reputation in the community.

A-0076-24

Compounding its error, the trial court then attributed the risk it found D.G. posed to Kun because of her statement she "wouldn't hesitate to give [D.G.] access" to her firearm safe. Solely due to this statement, the court disqualified her under the "health, safety, or welfare" subsection. N.J.S.A. 2C:58-3(c)(5).

The court's finding that Kun "wouldn't hesitate" to give D.G. access is not supported by substantial, credible evidence. See J.W.D., 149 N.J. at 116-17. The only basis of this finding was Kun's answer (which she later clarified) to the following hypothetical question:

> Court: Would you ever give him access to the combination or the key?
>
> A. Yes, I would. I don't have any –
>
> Court: You would give him access?
>
> A. I don't have concerns for him being suicidal or homicidal. I'm a psychiatrist myself. So, I don't, I mean, you probably want me to say I wouldn't, but like honestly, because I don't have –
>
> Court: Oh, no, I don't want you to say anything other than the truth, okay?
>
> A. I am telling you the truth. He's sober. He's not, this was a one time thing. He was grieving his mother. He drank for those six days. When the officers came in he was taken to the hospital. The psychiatrist there evaluated him deemed him not suicidal homicidal. Sent him home the same day. He's been in therapy. I think his therapist provided a letter. [The therapist] also has not been concerned for his safety.

13

It was unreasonable for the court to construe this answer as anything other than Kun's expression of her confidence in D.G.'s mental health and current stability. Far more probative testimony elicited at the hearing revealed Kun responsibly stored her firearm by locking it in a safe, accessible only to her. Moreover, she testified, in the three years she and D.G. had lived together before the incident, D.G. had never requested nor was ever given access to the firearm.[2] The trial court's finding lacks support in this record.

Moreover, the trial court's interpretation of N.J.S.A. 2C:58-3(c) improperly engrafted a storage requirement onto the statute. Although there is a statute regulating firearm storage to preclude access to minors, see N.J.S.A. 2C:58-15, there exists no New Jersey statute regulating the storage of firearms for people who cohabitate with other adults. Simply put, Kun was under no legal obligation to lock away her firearm simply because she lived with D.G. It

---

[2] We note this testimony was elicited through direct questioning by the court. When presiding over a bench trial, the court may examine witnesses "to clarify testimony, aid the court's understanding, elicit material facts, and assure the efficient conduct of the trial." D.M.R. v. M.K.G., 467 N.J. Super. 308, 320-21 (App. Div. 2021); N.J.R.E. 614. In this case, the trial court extensively cross-examined Kun for clarifying her earlier statement she would give D.G. access to her firearm and, in doing so, crossed "that fine line that separates advocacy from impartiality" and substantially prejudiced Kun's right to a fair hearing. Id. at 321 (quoting Village of Ridgewood v. Sreel Inv. Corp., 28 N.J. 121, 132 (1958)).

A-0076-24

is not the court's role to rewrite N.J.S.A. 2C:58-3 to impose such a requirement. State v. Jones, 475 N.J. Super. 520, 531 (App. Div. 2023) ("[I]t is not our 'job to engraft requirements' on a statute 'that the Legislature did not include. [Rather,] [i]t is our role to enforce the legislative intent as expressed through the words used by the Legislature.'" (second and third alterations in original) (quoting Lippman v. Ethicon, Inc., 222 N.J. 362, 388 (2015))).

In sum, there is a lack of substantial credible evidence in this record demonstrating Kun poses a threat to the public health, safety, or welfare. N.J.S.A. 58-3(c)(5). In the absence of any legislative intent, the trial court cannot use the risk D.G. may pose to deny Kun her right to possess a firearm.

We reverse and remand for entry of an order vacating the compelled sale of Kun's firearm and the prospective forfeiture of her right to a FPIC. If Kun chooses to apply for a FPIC and HPP, the application should be analyzed under the statutory procedure. On remand, the court should determine whether "the firearms may be returned from the federally licensed firearms dealer, or whether some other remedy is available." M.U., 475 N.J. Super. at 203.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0076-24